1  Thomas Rubinsky (SBN 302002)
   Thomas.rubinsky@halpernmay.com
2  HALPERN MAY YBARRA GELBERG LLP
   550 South Hope Street, Suite 2330
3  Los Angeles, California 90071
   Telephone:  (213) 402-1900
4  Facsimile:  (213) 402-1901

5  Robert K. Kry (pro hac vice)
   rkry@mololamken.com
6  Jackson A. Myers (pro hac vice)
   jmyers@mololamken.com
7  MOLO LAMKEN LLP
   600 New Hampshire Ave., N.W., Suite 500
8  Washington, D.C. 20037
   Telephone:  (202) 556-2011
9  Facsimile:  (202) 556-2001

10 Attorneys for Petitioner
   GATE GOURMET KOREA CO., LTD.
11

12                    **UNITED STATES DISTRICT COURT**

13                    **CENTRAL DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| 15  GATE GOURMET KOREA CO., LTD., a Korean company,<br><br>Petitioner,<br><br>v.<br><br>ASIANA AIRLINES, INC., a Korean company,<br><br>Respondent. | CASE NO. 2:24-cv-01265-RGK-PD<br><br>**PETITIONER GATE GOURMET KOREA CO., LTD.'S REPLY IN SUPPORT OF PETITION TO ENFORCE ARBITRAL AWARD**<br><br>Before: Hon. R. Gary Klausner<br>Date:   June 3, 2024<br>Time:   9:00 a.m.<br>Place:  Courtroom 850, 8th Floor<br>        Roybal Federal Building<br>        and U.S. Courthouse |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I. Article V.2(b) Does Not Preclude Enforcement ..................................................... 2

    A. Asiana Failed To Raise Its Public Policy Objection in the Arbitration ........ 2

    B. Enforcement Would Not Violate U.S. Public Policy ..................................... 4

II. Article V.1(a) Does Not Preclude Enforcement ..................................................... 6

    A. Asiana Forfeited Its Validity Objection ......................................................... 7

    B. The Arbitration Clause Is Not Invalid ........................................................... 7

III. The Court Should Apply the Award Date Exchange Rate .................................... 9

CONCLUSION ................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*AAOT Foreign Econ. Ass'n (VO) Technostroyexport*
  *v. Int'l Dev. & Trade Servs., Inc.*, 139 F.3d 980 (2d Cir. 1998) ................................. 2

*Balkan Energy Ltd. v. Republic of Ghana*,
  302 F. Supp. 3d 144 (D.D.C. 2018) ............................................................................ 8, 9

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
  794 F.3d 99 (D.C. Cir. 2015) ....................................................................................... 8

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006) ..................................................................................................... 7, 8

*Changzhou AMEC E. Tools & Equip. Co. v. E. Tools & Equip., Inc.*,
  No. EDCV 11-00354, 2012 WL 3106620 (C.D. Cal. July 30, 2012) ........................ 6

*Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*,
  49 F.4th 802 (2d Cir. 2022) ......................................................................................... 3

*Cont'l Transfert Tech. Ltd. v. Fed. Gov't of Nigeria*,
  932 F. Supp. 2d 153 (D.D.C. 2013) ............................................................................ 10

*Cvoro v. Carnival Corp.*,
  941 F.3d 487 (11th Cir. 2019) ..................................................................................... 4, 5

*EGI-VSR, LLC v. Coderch Mitjans*,
  963 F.3d 1112 (11th Cir. 2020) ................................................................................... 9

*G & G Prods. LLC v. Rusic*,
  902 F.3d 940 (9th Cir. 2018) ....................................................................................... 8

*Galaxia Elecs. Co., Ltd. v. Luxmax, U.S.A.*,
  No. LA CV16-05144, 2023 WL 2347085 (C.D. Cal. Feb. 1, 2023) ........................... 10

*Howard Univ. v. Metro. Campus Police Officer's Union*,
  512 F.3d 716 (D.C. Cir. 2008) ..................................................................................... 7

*Linley Invs. v. Jamgotchian*,
  No. LA CV11-00724, 2014 WL 12665812 (C.D. Cal. Apr. 16, 2014) ....................... 9

*Liu Luwei v. Phyto Tech Corp.*,
   No. CV 18-2174, 2018 WL 6016958 (C.D. Cal. June 18, 2018) .................................. 5

*Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran
   v. Cubic Def. Sys., Inc.*, 665 F.3d 1091 (9th Cir. 2011) ........................................... 4, 6

*Nghiem v. NEC Elec., Inc.*,
   25 F.3d 1437 (9th Cir. 1994) ........................................................................................ 7

*Northrop Corp. v. Triad Int'l Mktg. S.A.*,
   811 F.2d 1265 (9th Cir. 1987) .................................................................................. 4, 5

*OJSC Ukrnafta v. Carpatsky Petroleum Corp.*,
   957 F.3d 487 (5th Cir. 2020) ........................................................................................ 7

*Sistem Mühendislik İnşaat Sanayi Ve Ticaret, A.Ş. v. Kyrgyz Republic*,
   741 F. App'x 832 (2d Cir. 2018) .................................................................................. 7

*Tatneft v. Ukraine*,
   21 F.4th 829 (D.C. Cir. 2021) ............................................................................... 2, 3, 5

*Tecnicas Reunidas de Talara S.A.C. v. SSK Ingenieria
   y Construccion S.A.C.*, 40 F.4th 1339 (11th Cir. 2022) ............................................... 2

*United States v. Isaacs*,
   359 F. App'x 875 (9th Cir. 2009) ................................................................................. 3

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) ........................................................................................ 3

### TREATY PROVISIONS AND STATUTES

Convention on the Recognition and Enforcement of Foreign Arbitral
   Awards art. V.1(a), June 10, 1958, 21 U.S.T. 2517, 2520 .................................. 6, 8, 9

Convention on the Recognition and Enforcement of Foreign Arbitral
   Awards art. V.2(b), June 10, 1958, 21 U.S.T. 2517, 2520 ....................................... 2, 5

9 U.S.C. § 207 ....................................................................................................................... 9

18 U.S.C. § 1952(b) .............................................................................................................. 5

Arbitration Act art. 17(1) (2020) (Korea) ................................................................... 8, 9

International Arbitration Act 1994 § 3 (2021) (Sing.) ....................................................... 9

International Arbitration Act 1994, First Schedule, art. 16(1) (2021) (Sing.) ................... 9

**OTHER AUTHORITIES**

*Restatement of the U.S. Law of International Commercial
and Investor-State Arbitration* (2024) ..................................................................... 2, 4

Arbitration Act art. 17(1) (2020) (Korea) ................................................................... 8, 9

International Arbitration Act 1994 § 3 (2021) (Sing.) ....................................................... 9

International Arbitration Act 1994, First Schedule, art. 16(1) (2021) (Sing.) ................... 9

**OTHER AUTHORITIES**

*Restatement of the U.S. Law of International Commercial
and Investor-State Arbitration* (2024) ..................................................................... 2, 4

## INTRODUCTION

Just ***one day*** after Gate Gourmet filed its petition in this Court to confirm its arbitral award against Asiana, the Korean courts confirmed the same award in Gate Gourmet's favor. *See* Declaration of Sy Nae Kim ("Kim Decl.") Ex. 1. Asiana's opposition mentions that decision in passing, but Asiana neither attaches a copy nor says anything about the court's reasoning. It is not hard to see why: The Korean court rejected the ***exact same public policy argument*** that Asiana makes here. The court held that Asiana's argument "should [have been] disputed in the merits stage of the arbitral proceedings." *Id.* at 12. And Chairman Park's "package deal" was not a basis for refusing to enforce the Award under Korean law regardless: Gate Gourmet did not "actively participate[] in inciting or abetting [any] breach of trust" merely by negotiating over a "package deal previously prepared" by Asiana's own chairman. *Id.* at 14.

Asiana thus finds itself in the extraordinary position of urging this Court to refuse to enforce Gate Gourmet's award because Asiana's own chairman violated Korean fiduciary duty law, even though the ***Korean*** courts have rejected the same argument. Asiana has now lost in the arbitration, lost in the Singapore courts at the arbitral seat, and lost in its own home-state courts in Korea. Yet Asiana insists on taking a ***fourth*** bite at the apple in the hope that this Court might somehow reach a different result. Asiana's demand is completely unprecedented. No U.S. court has ever refused to enforce an award in circumstances like these.

Asiana forfeited its objections to enforcement by not raising them during the arbitration. Asiana's public policy argument fails on the merits in light of the Korean court's decision. And Asiana's validity argument fails under well-established severability principles. Finally, Asiana's challenge to the exchange rate fails because Asiana misstates the authority it relies on.

The Court should grant the petition and enter judgment on the Award.

# ARGUMENT

## I. ARTICLE V.2(B) DOES NOT PRECLUDE ENFORCEMENT

Asiana contends that enforcing the Award would violate U.S. public policy because Asiana's chairman proposed a "package deal" in which two related subsidiaries would enter into two different agreements. Opp. 11-15. That argument fails for two reasons. Asiana failed to make its "package deal" argument during the arbitration. And Asiana shows no public policy violation regardless.

### A. Asiana Failed To Raise Its Public Policy Objection in the Arbitration

Asiana does not dispute that it failed to raise its "package deal" challenge during the arbitration. As the Singapore court noted, "[t]he first time that Asiana contended that there should be a finding of [the Catering Agreement's] invalidity" was during the set-aside proceedings. Bradshaw Decl. Ex. 4 ¶ 97. This was "a classic case of a party seeking to challenge an award on a case which it did not make before the Tribunal." *Id.* This Court should reject Asiana's challenge for the same reason. *See, e.g.*, *Tatneft v. Ukraine*, 21 F.4th 829, 838 (D.C. Cir. 2021) (refusing to address public policy challenge where party "had the opportunity to raise those claims before the arbitral panel").

Asiana argues that public policy objections "can be decided sua sponte" and thus are "effectively non-waivable." Opp. 11. That is incorrect. Article V.2(b) provides that a court "may" refuse to enforce an award on public policy grounds even absent a timely objection, not that it *must* do so. 21 U.S.T. 2517, 2520. Accordingly, "a party can waive a public-policy defense by failing to raise its objection in a timely manner." *Tecnicas Reunidas de Talara S.A.C. v. SSK Ingenieria y Construccion S.A.C.*, 40 F.4th 1339, 1345-46 (11th Cir. 2022); *see also AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 139 F.3d 980, 982 (2d Cir. 1998) (party forfeited public policy objection where it "had knowledge of concrete facts" but "remained silent"); *Restatement of the U.S. Law of International Commercial and Investor-State Arbitration* §§ 4.16 cmt. g, 4.23 cmt. c (2024) ("*Restatement*").

1    Asiana's failure to make this argument during the arbitration is also highly
2 relevant to the merits. Even if enforcing an allegedly unlawful contract might violate
3 public policy, that does not mean that it violates public policy to enforce an award
4 stemming from the contract where the respondent had ample opportunity to raise its
5 defense in the arbitration. *See Commodities & Mins. Enter. Ltd. v. CVG Ferrominera*
6 *Orinoco, C.A.*, 49 F.4th 802, 818-19 (2d Cir. 2022) (rejecting public policy defense
7 where "[t]he Panel carefully considered [the] corruption allegations and gave
8 Ferrominera ample opportunity to substantiate its claim"); *Tatneft*, 21 F.4th at 838 (same
9 where party "had the opportunity to raise those claims before the arbitral panel").

10   Those principles apply squarely here. Asiana had every opportunity to raise its
11 "package deal" argument in the arbitration. On August 27, 2020 — three months before
12 the arbitration hearing and six months before the Award — the Korean press reported
13 that the country's Fair Trade Commission had imposed a USD $27 million fine on the
14 Kumho Asiana group and referred Chairman Park for a criminal investigation based on
15 the same "package deal" that Asiana alleges here: Chairman Park had "signed a 30-year
16 contract to sell the airline's in-flight meal business . . . on the condition of investing
17 money into [a corporate affiliate]." Bradshaw Decl. Ex. 3.

18   Asiana's hearsay objection is meritless. Opp. 8 n.4. Gate Gourmet offers the
19 article, not for its truth, but to show that Asiana was on notice of the "package deal"
20 allegations. *See United States v. Isaacs*, 359 F. App'x 875, 877 (9th Cir. 2009) (articles
21 not hearsay when offered only to prove their "existence"). Indeed, this Court may take
22 ***judicial notice*** of the article for that purpose. *See Von Saher v. Norton Simon Museum*
23 *of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (court may "take judicial notice of
24 publications introduced to 'indicate what was in the public realm at the time'"). Plainly,
25 if the Korean press was reporting that regulators had fined Asiana and its corporate
26 affiliates tens of millions of dollars and referred Asiana's chairman for criminal
27 prosecution, Asiana had enough information to preserve this argument.
28

The arbitration record confirms Asiana's notice. The tribunal highlighted "evidence that the Parties structured the suite of agreements as a single comprehensive package." Bradshaw Decl. Ex. 1 (Award) ¶ 4.13.10. And while Asiana initially denied the allegation, by closing arguments its own counsel admitted that there was a package deal: "***[O]ne [agreement] was clearly conditional on the other, that is indisputable. It was a package deal.***" Supplemental Declaration of Robert Bradshaw ("Bradshaw Supp. Decl.") Ex. 6 at 83:19-20 (emphasis added).

A party forfeits an objection to enforcement if it "knew ***or should have known*** the basis for [the] objection" during the arbitration. *Restatement* § 4.23(a) (emphasis added). Clearly, Asiana at least ***should have known*** about its "package deal" argument during the arbitration. Asiana's failure to preserve the argument forfeits it for review.

### B.   Enforcement Would Not Violate U.S. Public Policy

Asiana's public policy defense also fails on the merits. The public policy exception is "construed narrowly" and applies only when enforcement "would violate the [United States's] most basic notions of morality and justice." *Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1096-97 (9th Cir. 2011). The asserted policy must be "well defined and dominant." *Northrop Corp. v. Triad Int'l Mktg. S.A.*, 811 F.2d 1265, 1271 (9th Cir. 1987). It must be "explicit" and ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Cvoro v. Carnival Corp.*, 941 F.3d 487, 496 (11th Cir. 2019). The policy must also be sufficiently powerful "to overcome th[e] strong policy favoring confirmation" of arbitral awards. *Cubic Def. Sys.*, 665 F.3d at 1098. Asiana makes none of those showings.

Asiana protests that Chairman Park violated his fiduciary duties under Korean law by structuring the Catering Agreement as part of a "package deal" that benefited another corporate affiliate. Opp. 12-14. But the Korean courts have now considered that same objection and held that, whatever Chairman Park may have done, **Gate Gourmet** did nothing that would justify refusing to enforce the Award under Korean law. Kim Decl.

Ex. 1. "Gategroup was not involved in the conception and planning stages of Kumho Group's package deal, but merely accepted the transaction after receiving a proposal from Kumho Group, which had completed the basic structure of the package deal in advance." *Id.* at 13. Gate Gourmet did not "actively participate[ ] in inciting or abetting [any] breach of trust," because "the negotiations were overall conducted within the framework of the package deal previously prepared by the Kumho Group." *Id.* at 14.

That Korean decision is fatal to Asiana's public policy claim. There is no U.S. public policy against enforcing awards based on conduct that is allegedly illegal under foreign law where foreign courts have already considered the conduct and held that it was **not illegal**. *See Liu Luwei v. Phyto Tech Corp.*, No. CV 18-2174, 2018 WL 6016958, at *4 (C.D. Cal. June 18, 2018) (rejecting public policy defense where respondent "raised these same arguments in its appeal to the [Chinese court] and that Court concluded that the Award was consistent with Chinese law"). Asiana cites no case refusing to enforce an award in similar circumstances.

Even if the Korean court had denied enforcement, that would not justify refusing to enforce the Award here. Article V.2(b) applies only when enforcement would violate the public policy of the ***forum state***, not the laws of a foreign country. 21 U.S.T. at 2520. "[T]he U.S. does not have a policy against enforcing arbitral awards predicated on underlying violations of foreign law." *Tatneft*, 21 F.4th at 838; *see also Northrop*, 811 F.2d at 1270-71 (enforcing award even though performance of contract would have violated foreign law). Asiana fails to show that any breach of fiduciary duty under Korean law violates some fundamental ***United States*** public policy.

Asiana cites an assortment of U.S. criminal statutes, including a federal anti-racketeering statute that criminalizes enterprises engaged in gambling, liquor sales, drug dealing, prostitution, extortion, bribery, or arson. 18 U.S.C. § 1952(b). None of those statutes prohibits "package deals" with the specificity required to qualify as an "explicit," "well defined," and "dominant" public policy under United States law. *See Northrop*, 811 F.2d at 1271; *Cvoro*, 941 F.3d at 496. Asiana's strained effort to compare

-5-

Gate Gourmet's conduct to "commercial bribery" (Opp. 12) is overwrought: Chairman Park, acting through investment advisors and outside counsel representing Asiana, proposed a multifaceted corporate transaction in which multiple Gategroup affiliates would contract with multiple Kumho Asiana affiliates, and Gategroup agreed to that structure. That Chairman Park may have run afoul of Korean fiduciary duty law by favoring one subsidiary over another does not convert Gate Gourmet's actions into commercial bribery. Allowing Asiana to avoid enforcement based on Chairman Park's "package deal" would penalize Gate Gourmet for its ***counterparty's*** actions.

Asiana does not dispute that the United States enforces fiduciary duties through shareholder suits rather than criminal penalties. Asiana insists that this fact "does not somehow render insignificant the fundamental public policies underlying those duties." Opp. 14. In fact, it is highly relevant: It shows that the United States considers fiduciary duties a matter of private economic concern among corporate stakeholders, not a "basic notion[] of morality and justice." *Cubic Def. Sys.*, 665 F.3d at 1096-97.

Asiana tries to compare this case to *Changzhou AMEC Eastern Tools & Equipment Co. v. Eastern Tools & Equipment, Inc.*, No. EDCV 11-00354, 2012 WL 3106620 (C.D. Cal. July 30, 2012), *aff'd*, 571 F. App'x 609 (9th Cir. 2014). But the court there refused to enforce an award because the arbitration agreement was signed under duress: The Chinese authorities had thrown the respondent in jail for twelve days without charging him with any crime and refused to release him until he signed the arbitration agreement. *Id.* at *11-19. Nothing remotely similar occurred here.

Asiana fails to show a violation of this country's "most basic notions of morality and justice." *Cubic Def. Sys.*, 665 F.3d at 1096-97. Its public policy argument fails.

## II.   ARTICLE V.1(A) DOES NOT PRECLUDE ENFORCEMENT

Asiana also argues that Chairman Park's "package deal" precludes enforcement under Article V.1(a) because it renders the Catering Agreement, including its arbitration clause, invalid under Korean law. That argument fails for similar reasons.

### A. Asiana Forfeited Its Validity Objection

Asiana forfeited its validity challenge by not raising the objection during the arbitration. It is hornbook law that "a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result." *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994); *see also OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, 957 F.3d 487, 498 (5th Cir. 2020); *Sistem Mühendislik İnşaat Sanayi Ve Ticaret, A.Ş. v. Kyrgyz Republic*, 741 F. App'x 832, 834 (2d Cir. 2018). "[A] party that does not object to the arbitrator's jurisdiction during the arbitration may not later do so in court." *Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716, 720 (D.C. Cir. 2008).

Asiana had plenty of notice during the arbitration that Chairman Park offered the Catering Agreement as part of a "package deal." *See* Bradshaw Decl. Ex. 3 (news report); Bradshaw Decl. Ex. 1 ¶4.13.10 (evidence at arbitration); Bradshaw Supp. Decl. Ex. 6 at 83:19-21 (Asiana's closing argument). Yet Asiana never once challenged the validity of the Catering Agreement on that or any other basis. "The first time that Asiana contended that there should be a finding of invalidity" was during the set-aside proceedings. Bradshaw Decl. Ex. 4 ¶97. Asiana thus forfeited the issue for review.

### B. The Arbitration Clause Is Not Invalid

Asiana's challenge also fails on the merits. The Korean decision rejecting Asiana's public policy claim is equally fatal to its validity claim. "[T]o regard the [Catering] Agreement at issue as invalid," the Korean court explained, "Gategroup must not only know or be able to know that the acts of [Chairman Park] could constitute a breach of trust, but [must have] actively incited or abetted the breach of trust." Kim Decl. Ex. 1 at 13-14. Gategroup did not do that. *Id.* at 14.

Even if the "package deal" did render the Catering Agreement invalid, that would not mean the arbitration clause contained within that agreement is invalid too. "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440,

445 (2006).  Asiana has never challenged the validity of the arbitration clause specifically — it does not argue, for example, that Chairman Park offered a particularly favorable dispute resolution mechanism to Gate Gourmet as consideration for financial benefits under the Bonds with Warrants Agreement.  Absent a challenge to the arbitration clause specifically, Asiana's Article V.1(a) argument fails.

Asiana insists that severability "must be evaluated under Korean law, not U.S. law, because of the parties' choice of Korean law in clause 28 of the Catering Agreement." Opp. 16.  That is incorrect.  Under Article V.1(a), the *validity* of an arbitration clause is determined by "the law to which the parties have subjected it." 21 U.S.T. at 2520.  But the *severability* of an arbitration clause is a question of federal arbitration enforcement law: "***[A]s a matter of substantive federal arbitration law***, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing*, 546 U.S. at 445 (emphasis added); *see also Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 102-03 (D.C. Cir. 2015) (applying U.S. severability principles).  The Federal Arbitration Act thus requires a court to analyze the validity of an arbitration clause separately from the rest of the contract, regardless of what foreign law may require.

In any event, as the proponent of foreign law, Asiana bears the burden of proving what Korean severability law is.  "[A] party relying on foreign law has an obligation . . . to provide the district court with the information needed to determine the meaning of the foreign law." *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 949 (9th Cir. 2018).  Asiana does not even attempt to meet that burden, instead merely requesting permission to brief the issue at some future date.  Opp. 16.  Asiana has forfeited the issue by failing to prove the content of Korean law in its opposition to the petition.  *See Balkan Energy Ltd. v. Republic of Ghana*, 302 F. Supp. 3d 144, 149 n.2 (D.D.C. 2018) (respondent must "include[] all arguments and supporting affidavits for denial of the Petition in its response to the Petition, rather than submitting them in piecemeal fashion").

In fact, Korean law is perfectly clear.  Article 17 of Korea's Arbitration Act provides that, for purposes of "any objections with respect to the existence or validity of

-8-

1  the arbitration agreement," "an arbitration clause which forms part of a contract shall be
2  treated as an agreement independent of the other clauses of the contract." Kim Decl. ¶3
3  & Ex. 2 § 17(1). Korean law is thus no different from U.S. law: Asiana's challenge to
4  the Catering Agreement as a whole does not impugn the arbitration clause.[1]

### III.  THE COURT SHOULD APPLY THE AWARD DATE EXCHANGE RATE

Asiana finally urges the Court to convert the Award from Korean won to U.S. dollars using the exchange rate prevailing on the date this Court enters judgment rather than the date of the Award. Asiana misstates the authority it relies on.

The Eleventh Circuit addressed this issue at length in *EGI-VSR, LLC v. Coderch Mitjans*, 963 F.3d 1112 (11th Cir. 2020). The court explained that, under Supreme Court precedent, when a cause of action arises under U.S. law, courts should apply the exchange rate on the date of the breach. *Id.* at 1122-23. In an arbitral enforcement action, the "cause of action" arises under the Federal Arbitration Act, specifically 9 U.S.C. § 207. *Id.* at 1123. "The breach day rule requires conversion using the exchange rate on the date that the cause of action arose," and "[a] cause of action arises under § 207 of the FAA as soon as an arbitration award 'is made.'" *Id.* The "proper conversion date" is thus the date "the Arbitration Award issued." *Id.*

Asiana claims that *EGI-VSR* somehow supports the "judgment day" rule. Opp. 16-17. But the Eleventh Circuit clearly held that, in an arbitral enforcement proceeding under the FAA, the date of the award, not the date of the judgment, governs. 963 F.3d at 1123. Respondents also observe that Judge Kronstadt of this Court applied the judgment day rule in *Linley Investments v. Jamgotchian*, No. LA CV11-00724, 2014 WL

---

[1] Asiana also errs in assuming that Korean law governs the validity of the arbitration clause merely because the Catering Agreement includes a general choice of law clause selecting Korean law. Substantial authority holds that "the law to which the parties have subjected" an arbitration clause for purposes of Article V.1(a) is the law of the arbitral seat, not the law of a general choice of law clause in the broader contract. *See, e.g.*, *Balkan Energy*, 302 F. Supp. 3d at 152-53. The difference is academic in this case, however, because Singapore law contains an equally clear severability clause. *See* Declaration of Liew Wey-Ren Colin Ex. 1 § 3 & First Schedule, art. 16(1).

12665812, at *4 (C.D. Cal. Apr. 16, 2014). But Judge Kronstadt has since reconsidered that view. In *Galaxia Electronics Co., Ltd. v. Luxmax, U.S.A.*, No. LA CV16-05144, 2023 WL 2347085 (C.D. Cal. Feb. 1, 2023), Judge Kronstadt observed that "[c]ourts have used the exchange rate on the date of an arbitration award to convert an award in foreign currency into U.S. dollars" and cited four other cases following that approach. *Id.* at *28; *see also Cont'l Transfert Tech. Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 158-62 (D.D.C. 2013), *aff'd*, 603 F. App'x 1 (D.C. Cir. 2015).

Asiana urges that Gate Gourmet is the "author of its own misfortune" because it "waited almost three years to file its Petition." Opp. 17. That argument is outrageous. The tribunal ordered Asiana to pay Gate Gourmet in February 2021. Bradshaw Decl. Ex. 1. Gate Gourmet had to file this enforcement action only because Asiana has refused to comply with the Award for three years. If Asiana wanted to avoid the risk of foreign currency depreciation, it should have paid the Award promptly rather than flouting the results of the parties' agreed-upon dispute resolution process. There is no conceivable sense in which Gate Gourmet is to blame for Asiana's own payment delays.

## **CONCLUSION**

The Court should grant the petition and enforce the Award.

DATED:  May 20, 2024                                     HALPERN MAY YBARRA GELBERG LLP

                                                         By:      */s/ Thomas Rubinsky*
                                                                  THOMAS RUBINSKY

                                                         *Attorneys for Petitioner*
                                                         GATE GOURMET KOREA CO., LTD.

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for petitioner Gate Gourmet Korea Co., Ltd., certifies that this reply contains 10 pages and 3,439 words, excluding the exempted portions, which:

____ complies with the word limit of L.R. 11-6.1.

_X_ complies with the page limit set by this Court's May 2023 Standing Order.

DATED:  May 20, 2024                              HALPERN MAY YBARRA GELBERG LLP

                                                  By:       /s/ Thomas Rubinsky
                                                            THOMAS RUBINSKY

                                                  *Attorneys for Petitioner*
                                                  *GATE GOURMET KOREA CO., LTD.*