# EXHIBIT 1

# Seoul Southern District Court

## Civil Division No. 13

## Decision

Case      2021Kagi1285 Arbitral Award Recognition and Enforcement decision request

Claimant    Gate Gourmet Korea Co. Ltd.
103, Gonghangdong-ro 2-gil, Jung-gu, Incheon (Unseo-dong)
Director: Singaporean Citizen Chong Mei Foong
Legal Representative:
    Law Firm Yulchon LLC
    Attorneys in charge: Kim Sy-nae, Min Chul-ki, Jin Bo-sung

Respondent   Asiana Airlines Inc.
443-83, Ojeong-ro, Gangseo-gu, Seoul (Osoe-dong)
Representative Director: Won Yoo-seok
Legal Representatives:
    Law Firm BAE, KIM & LEE LLC
    Attorneys in charge: Kang Dong-wook, Yun Yeo-hyeong
    Law Firm YOON & YANG LLC
    Attorneys in charge: Yoo Seung-ryong, Lee Su-yeol,
                Kyung Mun-jeong, Roh Min-wook

## Order

1. The Arbitral Award of the International Chamber of Commerce International Court of Arbitration in Case No. 24544/HTG between the Claimant and the Respondent, dated 18 February 2021, as specified in Annex 1, and the Addendum to the Arbitral Award, dated 2 April 2021, as specified in Annex 2, are hereby recognized, and enforcement of those are granted.

2. The cost of the application shall be borne by the Respondent.

### Reasons for the Order

**1. Facts**

The record and the hearing as a whole establish the following facts.

### A. Status of the Parties

The Claimant is a company established as a joint venture between Gate Gourmet Switzerland GmbH (hereinafter referred to as "Gate Gourmet Switzerland"), a member of Gategroup, and



TRANSLATED BY:
VERZTEC CONSULTING PTE LTD
Company Reg. No 200301479K
Address: 10 Jalan Besar #16-01/02
Sim Lim Tower Singapore 208787

**Exhibit 1, Page 4**

the Respondent for the purpose of providing in-flight catering services to airlines in the Republic of Korea, and the Respondent is a company engaged in the business of domestic and international air transportation.

**B. Pursuit of the Package deal with Gategroup**

1) Kumho Asiana (hereinafter referred to as the "**Kumho Group**") is an enterprise group subject to the limitations on mutual investment that has 24 affiliates, including the Respondent, Kumho Industrial Co. Ltd. (all references to "Co. Ltd." shall be omitted), and Kumho Corporation, with total assets of KRW 15.246 trillion as of 2016. Park Sam-koo is the same person of Kumho Group, who served as the CEO of Kumho Industrial from November 2013 to March 2019, the CEO of the Respondent from March 2014 to March 2019, the CEO of Kumho & Company from around October 2015 to August 2016, and the CEO of Kumho Holdings from August 2016 to June 2018.

2) Kumho Group experienced a liquidity crisis in the process of acquiring Daewoo Engineering & Construction in 2006, which led to the insolvency of its affiliates, and from 2010, Kumho Industrial and Kumho Tires went through workouts, and hence, major affiliates were placed under the management of creditors, including Korea Development Bank. In order to regain control of Kumho Group, which he had lost during the workout process, Park Sam-koo sought to reacquire the shares of Kumho Industrial, the largest shareholder of the Respondent and the de facto holding company of Kumho Group, which controlled a number of affiliated companies.

3) Accordingly, on 6 October 2015, Park Sam-koo and the executives and employees of the Strategic Management Office, a subordinate organization that implemented Park Sam-koo's instructions in the Holding Division of Kumho Industrial, established a special purpose corporation, "Kumho & Company," comprised of 100% of Park Sam-koo's personal shares, and promoted the change of group's governance structure in the form of "Park Sam-koo → Kumho & Company → Kumho Industrial → Respondent → other affiliated companies", and in the process, the Respondent's exclusive right to supply in-flight meals would be passed over at a low price to an overseas in-flight catering-related company, and Kumho & Company would receive an investment of approximately KRW 160 billion to KRW 200 billion from that overseas company, with which Park Sam-koo and his family members would acquire shares in Kumho Industrial and regain control of the Kumho Group, thus establishing a "group reconstruction plan".

4) Park Sam-koo and others proposed a "package deal" to a number of overseas in-flight catering providers, including Singapore Airline Terminal Service ("SATS"), DNATA (an in-flight catering provider in Dubai), and Gategroup (which operates in-flight catering provider Gate Gourmet), stating that 'if you invest KRW 200 billion in Kumho & Company, we will give you the exclusive right to supply Respondent's in-flight catering for 30 years.   On 19 August 2016, Kumho & Company entered into an agreement, pursuant to which Kumho & Company would receive funds from Gategroup in the form of bonds with warrants (Bonds with Warrant Subscription Agreement) on the condition that, the Respondent grants Gategroup the exclusive right to supply in-flight catering for 30 years.



TRANSLATED BY:
VERZTEC CONSULTING PTE. LTD.
Company Reg. No. 200301478K
Address: 10 Jalan Besar #15-01/02
Sim Lim Tower Singapore 208787

**C. Package Deal with Joint Venture Agreement, In-flight Catering Supply Agreement at issue, and Bonds with Warrant Subscription Agreement, etc.**

1) On 30 December 2016, the Respondent entered into a joint venture agreement with Gate Gourmet Switzerland to establish the Claimant, whereby 60% of the shares of the Claimant were to be held by Gate Gourmet Switzerland and 40% by the Respondent.

2) On 30 December 2016, the Claimant and the Respondent entered into an In-flight Catering Supply Agreement pursuant to which the Respondent agreed to grant the Claimant the exclusive right to supply in-flight meals for a period of 30 years from 1 July 2018 (hereinafter referred to as the "In-flight Catering Supply Agreement at issue").

3) On 10 March 2017, Kumho Holdings (name changed to Kumho Holdings after Kumho & Company was merged into Kumho Terminal) entered into an agreement with Gategroup Financial Services S.àr.l, an affiliate of Gate Gourmet Switzerland, to issue Bonds with Warrants (BW) totaling KRW 160 billion with an interest rate of 0% and a maximum term of 20 years, to be acquired by Gategroup Financial Services.

4) On 10 March 2017, Gate Gourmet Switzerland entered into a Management Service Agreement in connection with the In-flight Catering Supply Agreement at issue, providing that the Claimant would pay Gate Gourmet Switzerland 5% of its gross sales in exchange for the use of Gategroup's business operation know-how and intellectual property rights.

**D. Commencement of In-flight Catering Supply**

Due to the delay in the construction of the Claimant's new in-flight catering facility, it became impossible for the Claimant to supply in-flight catering to the Respondent from 1 July 2018, as scheduled in the In-flight Catering Supply Agreement at issue, and the Respondent temporarily sourced in-flight food from Sharp Do & Co Korea Limited Company (LC) until the Claimant was able to supply in-flight catering. The Claimant's in-flight catering manufacturing plant was completed on 29 August 2018, and the Claimant began supplying in-flight catering to the Respondent from 12 September 2018.

**E. The Request for Arbitration and Counterclaim at issue**

1) Thereafter, a dispute arose between the Claimant and the Respondent over the method of determining the price under the In-flight Catering Supply Agreement at issue etc., and on 17 June 2019, the Claimant filed an arbitration with the International Chamber of Commerce International Court of Arbitration seeking payment of the outstanding invoices issued by the Claimant to the Respondent under the In-flight Catering Supply Agreement at issue and confirmation that the Claimant and the Respondent were bound by the price determination method in the In-flight Catering Supply Agreement at issue. (ICC Arbitration Case No. 24544 HTG).

2) In response, the Respondent contested that the price determination method was not fixed


TRANSLATED BY:
VERZTEC CONSULTING PTE LTD
Company Reg. No. 200301479K
Address: 10 Jalan Besar #16-01/02

for 30 years, and the Respondent sought restitution for the amounts it claimed to have overpaid and filed a counterclaim for damages due to the Claimant's alleged breaches of the In-flight Catering Supply Agreement at issue, including delays in supply and falling short of substandard quality.

**F.   Arbitral Award and Addendum to the Arbitral Award**

1) The International Chamber of Commerce International Court of Arbitration selected John Beechey (CBE), Gary Born and J. William Rowley, QC as arbitrators.

2) On 18 February 2021, the Singapore arbitral tribunal composed of the above arbitrators made the arbitral award as shown in Appendix 1, and on 2 April 2021, upon the Claimant's request for correction, made the Addendum to the Arbitral award as shown in Appendix 2 (The above arbitral award and addendum to the arbitral award, granting the Claimant's claims and dismissing the Respondent's counterclaim, are hereinafter collectively referred to as the "Arbitral Award at issue".)

**G.   Relevant Criminal Case**

1) Park Sam-koo and executives of the Strategic Management Office, including Park Hong-seok, were indicted for crimes including a violation of the Act on the Aggravated Punishment, etc. of Specific Economic Crimes (breach of trust) in relation to the signing of the In-flight Catering Supply Agreement at issue with Gate Gourmet. On 17 August 2022, the court convicted Park Sam-koo, Park Hong-seok, and others of the crime of transferring in-flight catering business rights at a low price as a violation of the Act on Aggravated Punishment of Certain Economic Crimes (breach of trust) and declared conviction to Park Sam-koo and others. (Seoul Central District Court 2021 Gohap 482). In response to this, both Park Sam-koo and the prosecution have appealed, and the case is currently under appeal. (Seoul High Court Case No. 2022No2261).

2) Among the relevant criminal judgment, the following are key contents relevant to this case.

---

**3. Defendants Park Sam-koo, Park Hong-seok, Kim Ho-kyun, Kumho Construction for violations of the Act on the Aggravated Punishment, etc. of Specific Economic Crimes (Breach of Trust) and the Monopoly Regulation and Fair Trade Act:**

Defendant Park Sam-koo, as the same person of Kumho Group, served from November 2013 to March 2019 as the CEO of Kumho Industrial, and from March 2014 to March 2019 as the CEO of Asiana Airlines. Defendant Park Hong-seok, from January 2014 to June 2016, worked as the Business Management Division Head at Kumho Tire, supporting international contracting and other overseas operations as part of the Strategic Management Office under the directives of Defendant Park Sam-koo, and from July 2016 to December 2020, he served as the Head of the Strategic Management Office and Vice President of Kumho Industrial. Defendant Kim Ho-kyun served as the finance executive of Asiana Airlines from March 2015 to March 2019.

**A. Violations of Specific Economic Crimes (Breach of Trust) related to the transfer of the in-**

TRANSLATED BY:
VERZTEC CONSULTING PTE LTD
Company Reg. No. 200301478K
Address: 10 Jalan Besar #18-01/02
Sim Lim Tower Singapore 208787


**flight catering business rights at a low price**

As described in Article 1 B, because the victim Asiana Airlines was in a very poor financial condition and had low corporate liquidity, the public funds worth approximately KRW 1.1211 trillion were invested as of the end of 2015, but the "exclusive right to supply in-flight catering" for Asiana Airlines was a blue-chip business right that generated approximately KRW 120 billion in annual sales and KRW 30 billion in annual net profit based on LSG Sky Chefs Korea (hereinafter referred to as "LSGK"), which exclusively supplied in-flight catering to Asiana Airlines from 2003 to 2018. Accordingly, from around May 2015, the Defendants considered transferring the 'exclusive right to supply in-flight catering', a core asset of the victim Asiana Airlines, to an overseas in-flight catering company at a low price and receiving an investment of approximately KRW 160 billion to KRW 200 billion in Kumho & Company to be used in the aforementioned 'Group Reconstruction Plan'.

Accordingly, from around May 2015 to late 2016, they hired "Spring Partners", an investment consulting firm, to make proposals to a number of overseas in-flight catering companies, including SATS, DNATA, and Gategroup (which operates in-flight catering supplier Gate Gourmet), suggesting that 'if they invested KRW 200 billion in Kumho & Company, they would be given the exclusive right to supply in-flight catering to the victim Asiana Airlines for 30 years (hereinafter referred to as the 'Package Deal'), in the course of negotiations with the above companies, the value of the exclusive right to supply in-flight meals was valued at approximately KRW 406 billion to KRW 632 billion, and LSGK, SATS, and others made a counter-offer to the effect that 'they would invest KRW 200 billion in Asiana Airlines, as the structure of investing in Kumho & Company rather than Asiana Airlines may constitute a breach of trust', but the Defendants rejected the counter-offer.

In such cases, Defendant Park Sam-koo, the CEO of the victim Asiana Airlines, and Defendant Kim Ho-kyun, the financial officer of the victim Asiana Airlines, had a duty of care as good managers to consider the interests of the corporation, its shareholders, and creditors when managing major assets of the Asiana Airlines, and, in the event of a transaction involving critical assets, such as the exclusive in-flight catering business right held by the victim, Asiana Airlines, to appropriately evaluate the value of such assets and trade them at a fair price that is consistent with their actual value, in particular, in the event of a conflict of interest transaction involving the transfer of assets of the victim, Asiana Airlines, in exchange for financing to a company controlled by the defendant Park Sam-koo, it was his managerial duty to objectively evaluate the value of those assets through competitive bidding or using various valuation methods, and then synthesize the results to set the price and terms of the transaction so that the interests of the shareholders and creditors of the victim Asiana Airlines would not be compromised, and to ensure that the proceeds and funds from the transaction were properly used for the benefit of the victim Asiana Airlines.

Despite this, the Defendant Park Sam-koo instructed Defendants, including Park Hong-seok, to commence negotiations for the above package deal with Gategroup from early January 2016. Defendant Park Hong-seok, along with representatives from Spring Partners, began negotiations for the "package deal" with Gategroup representatives in Singapore from 12 January 2016, and engaged in detailed discussions about the "package deal" with Gategroup representatives in London and Madrid towards the end of January 2016, together with Defendant Kim Ho-kyun. Meanwhile, in early February 2016, they further refined the "business plan," which involved Gategroup investing in Kumho & Company through the acquisition of bonds with warrants (referred to as "BW") and recouping the investment through the in-flight catering business with Asiana Airlines, during Gategroup representatives' visit to Seoul. To reach an agreement on the draft "business plan," Xavier

TRANSLATED BY:
VERZTEC CONSULTING PTE. LTD.
Company Reg. No. 200301478K
Address: 10 Jalan Besar #18-01/02
Sim Lim Tower Singapore 208787

Exhibit 1, Page 8

Rossinyol, CEO of Gategroup, visited Seoul on 15 February 2016, and Defendant Park Sam-koo personally met with Xavier Rossinyol in the Asiana Town building in Osoe-dong, Gangseo-gu, Seoul, on 16 February 2016, and approved the above "business plan."

Subsequently, Defendants Park Sam-koo and Park Hong-seok concluded a contract (AGREEMENT REGARDING BOND WITH WARRANT SUBSCRIPTION) on 19 August 2016, with Gategroup, which involved receiving funds for Kumho & Company in exchange for granting a 30-year exclusive right to provide in-flight catering services, arbitrarily set the value of the exclusive rights at KRW 133.3 billion, in line with Gategroup's domestic facility investment of KRW 80 billion (aligned with a 60:40 joint venture ratio, KRW 80 billion to KRW 53.3 billion, totaling KRW 133.3 billion). On 30 December 2016, the Defendants transferred the above exclusive right at a price significantly lower than the actual value to Gategroup through a negotiated contract, which agreed to support the investment with a zero percent interest rate and a maximum term of 20 years, amounting to KRW 160 billion, and set detrimental contractual conditions for Asiana Airlines, including a minimum net profit guarantee.

As a result, the Defendants conspired sequentially and contrary to their managerial duties, causing Asiana Airlines to transfer the 30-year exclusive right to provide in-flight catering services to Gategroup at a low price and obligating Asiana Airlines to pay additional profits to Gategroup for 30 years as per the "minimum net profit guarantee agreement." In return, they enabled Kumho & Company, controlled by Defendant Park Sam-koo, to receive a total of KRW 160 billion in funds from Gategroup at a zero percent interest rate for a maximum of 20 years, thereby obtaining a property benefit of at least KRW 5 billion, caused property damage to the victim, Asiana Airlines, in an amount equal to the difference between the fair value of the transfer and the actual transfer of the exclusive in-flight catering business.

### H. Arbitration Act and Convention on the Recognition and Enforcement of Foreign Arbitral Awards

The provisions of the Arbitration Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (hereinafter referred to as the "New York Convention") that are relevant to this case are as follows

---

**Arbitration Act**

**Article 39 (Foreign Arbitral Awards)**
① The recognition or enforcement of a foreign arbitral award subject to the [Convention on the Recognition and Enforcement of Foreign Arbitral Awards] shall be in accordance with the same Convention.

**New York Convention**

**Article 1**
1. This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal…

---

TRANSLATED BY:
VERZTEC CONSULTING PTE LTD.
Company Reg. No. 200301479K
Address: 10 Jalan Besar #16-01/02
Sim Lim Tower Singapore 208787



**Exhibit 1, Page 9**

> **Article 2**
> 1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
> 2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.
>
> **Article 3**
> Each Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles. There shall not be imposed substantially more onerous conditions or higher fees or charges on the recognition or enforcement of arbitral awards to which this Convention applies than are imposed on the recognition or enforcement of domestic arbitral awards.
>
> **Article 5**
> 2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that: …
>    (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

2.  **Judgment**

   A.  **Application of the New York Convention**

   1) The Republic of Korea acceded to the New York Convention on 8 February 1973, with the reservation that it would apply the Convention only to: (1) arbitral awards made in the territory of another contracting state, and (2) disputes that are considered as relating to commercial relationships under the national law of the Republic of Korea. The Convention entered into force in the Republic of Korea on 9 May 1973.

   2) Article 39(1) of the Arbitration Act states, "The recognition or enforcement of a foreign arbitral award subject to the [Convention on the Recognition and Enforcement of Foreign Arbitral Awards] shall be in accordance with the same Convention," and Article 1 of the New York Convention stipulates, "This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal." Based on the aforementioned facts of the case, the arbitration subject of this case arises from the legal relationship generated by the In-flight Catering Supply Agreement at issue concluded between the Claimant and the Respondent, which corresponds to a dispute related to commercial relationships under the law of the Republic of Korea. Since the Arbitral Award at issue was made in Singapore, the designated place of arbitration by the parties, the recognition and enforcement of this Arbitral Award are subject to the New York Convention.

   B.  **Judgment on the Cause of Claim**


TRANSLATED BY:
VERZTEC CONSULTING PTE LTD.
Company Reg. No. 200301478K
Address: 10 Jalan Besar #18-01/02
Sim Lim Tower Singapore 208787

**Exhibit 1, Page 10**

Pursuant to Articles 2 and 3 of the New York Convention, the Arbitral Award at issue shall be recognized and enforced in the Republic of Korea unless Respondent alleges and proves that the award is subject to Article V(1) of the New York Convention, or this Court finds that it is subject to Article V(2) of the New York Convention.

**C. Judgment on the Respondent's Allegations**

1) Respondent's Allegations

    a. The In-flight Catering Supply Agreement at issue was concluded as a result of Gate Group's active participation in the breach of trust of Park Sam-koo and others, and recognition and enforcement of the Arbitral Award at issue would constitute the realization of a profit obtained through participation in a criminal act under the Criminal Code of the Republic of Korea, and therefore should not be permitted under Article 39(1) of the Arbitration Act and Article V(2)(b) of the New York Convention, as it falls under " The recognition or enforcement of the award would be contrary to the public policy of that country".

    b. The Respondent argued in the arbitration proceedings that the In-flight Catering Supply Agreement at issue was invalid if it was interpreted as being concluded in exchange for Gategroup's acquisition of bonds with warrant (BW) from Park Sam-koo for KRW 160 billion, but the arbitral tribunal did not address this argument of the Respondent, which corresponds to the omission of judgment on an important matter affecting the outcome of the judgment at Article 451, paragraph 1, item 9, of the Civil Procedure Act, which is grounds for refusing to recognize and enforce the arbitral award.

2) Judgment on the Argument of "Against Country's Good Morals and Public Policy"

    a. Relevant Legal Principles

        According to Article V(2)(b) of the New York Convention, if the recognition or enforcement of an arbitral award would be contrary to the public policy of that country, the courts of the enforcing country may refuse its recognition or enforcement, which is intended to protect the fundamental moral convictions and social order of the enforcing country by preventing the recognition or enforcement of the award from harming them. In making that judgment, it should be interpreted restrictively, considering not only domestic circumstances but also the stability of the international trading order, and recognition or enforcement may be refused when the specific consequences of recognizing the arbitral award are contrary to the good morals and social order of the enforcing country (see Supreme Court judgment of 11 April 2003, Case No. 2001Da20134).

        As the counterparty to a transaction with the perpetrator of a breach of trust is fundamentally engaged in the transaction independently on the opposite side with a separate interest from the perpetrator, if the counterparty induces or abets the breach of trust, or actively participates in the entire process of the breach of trust, the


TRANSLATED BY:
VERZTEC CONSULTING PTE. LTD.
Company Reg. No. 200301479K
Address: 10 Jalan Besar #16-01/02
Sim Lim Tower Singapore 208787

**Exhibit 1, Page 11**

contract concluded with the perpetrator may be deemed a socially unacceptable legal act and become void. However, if the degree of involvement does not reach that extent, and from the perspective of the legal order as a whole, the counterparty demands necessary measures to independently avoid the risks of the transaction from the opposite side and to protect its legitimate interests etc., and if it can be evaluated as having social reasonability based on the motive, purpose, and intent of the agreement, the content of the agreement and the necessity or relevance of the action requested, and the relationship between the counterparty and the perpetrator of the breach of trust, even if the counterparty knew or could have known that the perpetrator's actions in entering into the agreement may constitute an act of breach of trust, such circumstances alone cannot make to constitute as an anti-social legal act and render the agreement void. (See Supreme Court judgment of 26 March 2009, Case No. 2006Da47677).

b.   Specific Judgement

① Since a foreign arbitral award has the same effect as a final and conclusive judgment, it carries res judicata; therefore, once the enforcement is granted through an execution recognition order, procedure for compulsory execution can be proceeded, and in light of the purpose of the New York Convention and the related legal principles, enforcement of an arbitral award may not be refused on the grounds that the award is unreasonable merely because it is inconsistent with the substantive rights of the enforcing state, unless there are exceptional circumstances, such as when enforcement would be contrary to the public order of the enforcing state from an international perspective or when enforcement would be manifestly unjust for reasons falling within the scope of the reason for a retrial.

However, the ground for refusal of enforcement claimed by the Respondent—that the In-flight Catering Supply Agreement at issue was concluded as a result of active participation in a breach of trust, constituting as an anti-social order legal act and therefore substantively invalid—is a defense that should be disputed in the merits stage of the arbitral proceedings, and not a ground for refusal at the enforcement proceeding.

② Even if the above grounds are considered to constitute a case where enforcement of the arbitral award would be impermissible for being contrary to public order, the following circumstances, which can be acknowledged from the record and the hearing as a whole, do not establish that the Claimant actively participated in the breach of trust of Park Sam-koo and others in entering into the In-flight Catering Supply Agreement at issue.

○ In order to raise the funds necessary for Park Sam-koo's acquisition of Kumho Industrial through the Respondent's in-flight catering business rights as a medium, Kumho Group arranged a package deal, which included the establishment of a joint venture, an exclusive In-flight Catering Supply Agreement at issue, and the acquisition of bonds with warrants subscription, and then made a package deal proposal to LSGK, SATS, DNATA, and other in-flight catering companies through

TRANSLATED BY:
VERITEC CONSULTING PTE LTD
Company Reg. No. 200301478K
Address. 10 Jalan Besar #16-01/02
Sim Lim Tower Singapore 208787

Spring Partners, a domestic corporation affiliated with investment advisory firm Hong Leong Group of Singapore, but negotiations broke down. After negotiations with the above companies broke down, Kumho Group made the same proposal to Gategroup around January 2016, and Gategroup negotiated with Respondent and Kumho Holdings for over a year over various terms and conditions, including the term and supply price of the exclusive In-flight Catering Supply Agreement at issue, the amount of bonds to be acquired and the repayment period of the bonds, and the shareholding ratio of the joint venture, and signed several memoranda of understanding etc. After concluding the procedure, Gategroup sequentially signed the joint venture agreement, the In-flight Catering Supply Agreement at issue, and the subscription agreement for the subscription of warrants. As can be understood from the process of concluding these transactions, Gategroup was not involved in the conception and planning stages of Kumho Group's package deal, but merely accepted the transaction after receiving a proposal from Kumho Group, which had completed the basic structure of the package deal in advance, and negotiated and coordinated the details in consideration of business prospects and economic benefits.

   o In light of the above structure of such a package deal, it appears that the Claimant recognized or could have recognized that the In-flight Catering Supply Agreement at issue with the Respondent and the subscription agreement for bonds with warrants with Kumho Holdings are interconnected, leading to results that are disadvantageous to the Respondent and advantageous to Kumho Holdings, yet this alone does not render the legal transaction entered into for economic motives by the Claimant, who is unrelated to the internal affairs of Kumho Group, invalid due to active participation in the offence of   breach of trust between affiliates of the Kumho Group .

   o It appears that the Claimant, under the In-flight Catering Supply Agreement at issue, has acquired a position that guarantees an exclusive supply right for 30 years and favorable pricing terms, which would lead to long-term stable sales revenue, but in return, the Claimant's affiliate Gategroup Financial Services agreed to support Kumho Holdings, an affiliate of the Respondent, with funds amounting to KRW 160 billion in the form of bonds with warrants subscription, interest-free for up to 20 years, thereby bearing the substantial losses equivalent to the interest or financial costs. When examining the interconnected structure of each contract that constitutes the package deal and the mutual relationships within each party's group as a whole, it is also difficult to see that the Claimant has unilaterally obtained an excessive economic benefit at the expense of the Respondent's loss by taking advantage of Park Sam-koo's and other's breach of trust.

③ On the contrary, the Respondent claims that Gategroup was well aware from the initial stages of the negotiation that the package deal in question was for the Group Reconstruction Plan and conspired with Park Sam-koo to conceal the deal's nature as breach of trust or a violation of the Fair Trade Act, thereby actively participating in Park's breach of trust.

However, to regard the In-flight Catering Supply Agreement at issue as invalid, as

TRANSLATED BY:
VERZTEC CONSULTING PTE LTD.
Company Reg. No. 200301479K
Address: 10 Jalan Besar #16-01/02
Sim Lim Tower Singapore 208787



described above, it must be recognized that Gategroup must not only know or be able to know that the acts of Park Sam-koo, etc. could constitute a breach of trust, but also that they actively incited or abetted the breach of trust or were involved in the entire process of the breach of trust. Even if it were recognized that Gategroup played a somewhat leading role in the course of negotiation process, such as proposing to resume negotiations after a suspension or presenting conditions favorable to themselves to be reflected, as long as the negotiations were overall conducted within the framework of the package deal previously prepared by the Kumho Group, the aforementioned circumstances alone are insufficient to establish that Gategroup actively participated in inciting or abetting Park Sam-koo and others' breach of trust or leading the entire process of the package deal, and there is no other evidence to support this conclusion.

3) Judgment on the Argument of "Omission of Judgment"

a. If a foreign arbitral award contains corresponding grounds for retrial under Article 451(1) of the Civil Procedure Act (such as the omission of a judgment on an important matter that could affect the decision of Article 9), and it is recognized that the enforcement of the award is so manifestly unjust and that it would be clearly contrary to justice to require the other party to accept the enforcement of the award, it is unacceptable in social life, seeking enforcement of that arbitral award could constitute an abuse of rights or be impermissible as against public policy or good morals (See Supreme Court judgment on 13 December 2018, Case No. 2016Da29931, et al.).

b. However, based on the respective statements in Exhibits 3, 18 and 19, it appears that the Respondent, during the arbitration proceedings, merely argued regarding interpretation of the contract under the assumption that the In-flight Catering Supply Agreement at issue was valid, "interpreting the pricing system of In-flight Catering Supply Agreement at issue by considering the bond with warrants subscription agreement as part of the background facts is unjust as it results in an interpretation that renders the in-flight catering contract invalid under the laws of the Republic of Korea," but did not argue that the In-flight Catering Supply Agreement at issue was invalid. Considering that the Respondent had filed a setting aside lawsuit of the arbitral award with the Singapore International Commercial Court on the grounds of omission of judgment, but the claim was dismissed, and the appeal was also rejected, this part of the Respondent's argument for the rejection of the enforcement of the arbitral award due to an omission of judgment is also without merit.

3. **Conclusion**

Therefore, since this claim is well-founded, it shall be granted as the Order.

16 February 2024

Presiding Judge   Judge   Choi Jeong-in



TRANSLATED BY:
VERZTEC CONSULTING PTE LTD.
Company Reg No. 200301679K
Address: 10 Jalan Besar #16-01/02
Sim Lim Tower Singapore 208787

**Exhibit 1, Page 14**

Judge    Lim Hyo-bin

Judge    Bang Min-woo

TRANSLATED BY:
VERITEC CONSULTING PTE LTD
Company Reg. No. 200301479K
Address: 10 Jalan Besar #18-01/02
Sim Lim Tower, Singapore 208787

Annex 1

# ARBITRAL AWARD[1]

**9.3 Tribunal's Arbitral award**

9.3.1 Based on the foregoing, the Tribunal hereby CONCLUDES, DECLARES, ORDERS and AWARDS as follows:

(a) The Respondent shall pay to the Claimant the sum of KRW 28,335,526,067.00 on account of principal under the outstanding invoices for the period from 12 September 2018 to 30 November 2019.

(b) The Respondent shall pay to the Claimant the sum of KRW 562,901,664.00 on account of interest payable as of 10 January 2020, on the principal amount outstanding on the Claimant's invoices as of 10 January 2020.

(c) The Respondent shall further pay to the Claimant simple interest on KRW 28,898,427,731.00, being the sum of the principal and interest amounts outstanding as of 10 January 2020, accruing at a rate of 8% p.a. above the 3 months KORIBOR from 10 January 2020 until full and final payment.

(d) The pricing system set forth in the In-flight Catering Supply Agreement at issue, including the Per Passenger Contribution Fee calculated in accordance with the Initial Business Plan, including the 2020 Business Plan, and any subsequent Business Plan as adjusted by the Claimant pursuant to Annex 1.4 of the In-flight Catering Supply Agreement at issue, is binding on the Parties and does not require any further agreement between them.

(e) The Respondent's counterclaims are dismissed in their entirety.

(f) The Respondent shall pay to the Claimant the sum of 1,474,523.26 British pounds sterling (GBP), 1,087,340.87 U.S. dollars (USD) and 6,948.05 Singapore dollars (SGD) on account of its the reasonable costs of the arbitral proceedings in this case (including the ICC's administrative fees and its share of the arbitral tribunal's allowances and expenses). This amount shall bear simple interest at the statutory rate of 5.33% per annum, as prescribed and charged pursuant to the Singapore International Arbitration Act, S.20(3), from two weeks after the date of the Award until the date of full payment.

---

[1] Based on the translated document submitted by the Claimant as SoGab Exhibit 3 (Evidence)

TRANSLATED BY:
VERZTEC CONSULTING PTE LTD
Company Reg. No. 200301479K
Address: 10 Jalan Besar #16-01/02
Sim Lim Tower, Singapore 208787

Annex 2

## ADDEUDUM TO THE ARBITRAL AWARD[2]

**4. Decision**

4.1.1 The Tribunal grants the correction requested by the Claimant pursuant to Article 36(2) of the ICC Rules, replacing para. 93.1(a)-(c) of the Arbitral award with the following wording.

(a) The Respondent shall pay to the Claimant the sum of KRW 35,799,240,103 on account of principal under the outstanding invoices for the period from 12 September 2018 to 15 October 2020.

(b) The Respondent shall pay to the Claimant the sum of KRW 3,105,902,561 on account of interest owing as of 30 October 2020, on the principal amount outstanding on Claimant's invoices as of 30 October 2020.

(c) The Respondent shall pay to Claimant further simple interest on KRW 38,905,142,664, being the sum of the principal and interest amounts outstanding as of 30 October 2020, accruing at a rate of 8% p.a. above the 3-month KORIBOR from 30 October 2020 until full and final payment.

4.1.2 The remainder of the Arbitral award remains unchanged.

---

[2] Based on the translated document submitted by the Claimant as SoGab Exhibit 4 (Evidence)

TRANSLATED BY:
VERZTEC CONSULTING PTE. LTD.
Company Reg. No. 2N0301479K
Address: 10 Jalan Besar #16-01/02
Sim Lim Tower Singapore 208787

**Exhibit 1, Page 17**

1   **CERTIFICATE OF TRANSLATION**

2   I, YUNJU KIM, declare and state as follows:

3   1.   I am a professional translator associated with Verztec Consulting Pte Ltd. in

4   Singapore.  I have 8 years of experience in translation and interpretation, and have

5   conducted over 100 interpretations and translations.  I am fluent in both the Korean and

6   English languages.

7   2.   I certify that the foregoing document titled "Seoul Southern District Court,

8   Civil Division No. 13, Decision" is a true and correct English translation of the

9   accompanying original Korean document, to the best of my knowledge and ability.

10

11   I certify under penalty of perjury under the laws of the United States of America

12   that the foregoing is true and correct.

13   Executed at Singapore on May _16_, 2024.

14

15   YUNJU KIM

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-

CERTIFICATE OF TRANSLATION

**Exhibit 1, Page 18**

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

# 서 울 남 부 지 방 법 원

## 제 1 3 민 사 부

### 결          정

사          건          2021카기1285  중재판정 승인 및 집행결정신청

신  청  인          게이트코메코리아 유한회사

인천 중구 공항동로2길 103 (운서동)

대표이사 싱가포르국인 총메이풍

소송대리인 법무법인(유한) 율촌 담당변호사 김시내, 민철기, 진보승

피 신 청 인          아시아나항공 주식회사

서울 강서구 오정로 443-83 (오쇠동)

대표이사 원유석

소송대리인 법무법인(유한) 태평양 담당변호사 강동욱, 윤여형

법무법인(유한) 화우 담당변호사 유승용, 이수열,

경문정, 노민욱

### 주          문

1. 신청인과 피신청인 사이의 국제상업회의소 국제중재재판소 사건번호 제24544/HTG

호 사건에 관하여 국제상업회의소 중재재판부가 2021. 2. 18.에 한 별지 1 기재 최

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

종 중재판정 및 2021. 4. 2. 한 별지 2 기재 부속판정을 각 승인하고, 그에 기한 강

제집행을 허가한다.

2. 신청비용은 피신청인이 부담한다.


# 이        유

## 1. 기초사실

기록 및 심문 전체의 취지에 의하면 다음과 같은 사실이 소명된다.

### 가. 당사자들의 지위

신청인은   게이트그룹   소속의   게이트고메   스위스   게엠베하(Gate   Gourmet

Switzerland GmbH, 이하 '게이트고메 스위스'라 한다)와 피신청인이 합작투자하여 대

한민국 내에서 항공사에 기내식 서비스를 제공하기 위한 목적으로 설립한 회사이고,

피신청인은 국내외 항공 운송업 등을 영위하는 회사이다.

### 나. 게이트 그룹과의 일괄거래 추진

1) 기업집단 금호아시아나(이하 '금호그룹'이라 한다)는 2016년 기준 자산총액이 약

15조 2,460억 원으로 피신청인, 금호산업 주식회사(이하 '주식회사'는 모두 생략한다),

금호기업 등 계열회사 24개가 속해있는 상호출자제한 기업집단이고, 박삼구는 2013.

11.경부터 2019. 3.경까지 금호산업 대표이사, 2014. 3.경부터 2019. 3.경까지 피신청인

대표이사, 2015. 10.경부터 2016. 8.경까지 금호기업 이사, 2016. 8.경부터 2018. 6.경까

지 금호홀딩스 대표이사 등으로 재직한 금호그룹의 동일인이다.

2) 금호그룹은 2006년경 대우건설 인수 등의 과정에서 유동성 위기를 겪으면서 그

계열회사의 부실화가 초래되어 2010년경부터 금호산업, 금호타이어가 워크아웃을 거치

**Exhibit 1, Page 20**

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

는 등 주요 계열회사가 한국산업은행을 비롯한 채권단의 관리를 받게 되었고, 박삼구는 워크아웃 과정에서 상실한 금호그룹의 지배권을 되찾기 위하여 다수 계열회사를 지배하고 있는 피신청인의 최대주주이자 금호그룹의 사실상의 지주회사인 금호산업의 주식을 재인수할 것을 추진하였다.

3) 이에 박삼구와 금호산업 지주사업부에서 박삼구의 지시를 이행하는 직속 조직인 전략경영실 임직원들은 2015. 10. 6. 박삼구의 개인 지분 100%로 구성된 특수목적법인 '금호기업'을 설립하여 '박삼구 → 금호기업 → 금호산업 → 피신청인 → 기타 계열회사'의 형태로 그룹 지배구조 변경을 추진하였고, 그 과정에서 피신청인의 기내식 독점 공급권을 해외 기내식 관련 업체에 저가로 넘기면서 금호기업이 그 해외 업체로부터 약 1,600억 원 내지 2,000억 원을 투자받아 그 자금으로 박삼구 및 그 일가가 금호산업의 주식을 인수하여 금호그룹의 지배권을 되찾는 '그룹 재건 계획'을 세웠다.

4) 박삼구 등은 싱가포르 항공 터미널 서비스(Singapore Airline Terminal Service, 이하 'SATS'라 한다), DNATA(두바이의 기내식 공급업체), 게이트그룹(기내식 공급업체 Gate Gourmet 운영)을 비롯한 복수의 해외 기내식 업체를 대상으로 '금호기업에 2,000억 원을 투자해주면 30년간 피신청인의 기내식 독점 공급권을 주겠다'는 취지의 '일괄거래(Package deal)' 제안을 하였고, 게이트그룹이 위 제안을 받아들임에 따라 2016. 8. 19. 피신청인이 게이트그룹에 30년간의 기내식 독점 공급권을 부여하는 조건으로 금호기업이 게이트그룹으로부터 신주인수권부 사채인수 방식에 의해 자금을 투자받는 내용의 계약(Agreement Regarding Bond With Warrant Subscription)을 체결하였다.

**다. 일괄거래에 따른 합작투자계약, 기내식 공급계약, 신주인수권부 사채인수계약 등**

**Exhibit 1, Page 21**

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

1) 피신청인은 2016. 12. 30. 게이트고메 스위스와 합작하여 신청인을 설립하되, 신청인의 지분 중 60%를 게이트고메 스위스가, 40%를 피신청인이 보유하기로 하는 합작투자법인 설립계약을 체결하였다.

2) 신청인과 피신청인은 2016. 12. 30. 피신청인이 2018. 7. 1.부터 30년간 신청인에게 기내식 독점공급권을 부여하기로 하는 내용의 기내식 공급계약을 체결하였다(이하 '이 사건 기내식공급계약'이라 한다).

3) 금호홀딩스(금호기업이 금호터미널에 합병되었다가 금호홀딩스로 명칭이 변경되었다)는 2017. 3. 10. 게이트고메 스위스의 계열사인 게이트그룹 파이낸셜 서비스(Gategroup Financial Services S.àr.l)와 총 1,600억 원의 신주인수권부 사채(BW)를 금리 0%, 최장기간 20년으로 발행하여 게이트그룹 파이낸셜 서비스로 하여금 인수하도록 하는 계약을 체결하였다.

4) 한편 게이트고메 스위스는 2017. 3. 10. 이 사건 기내식 공급계약과 관련하여 신청인이 게이트 그룹의 사업운영 노하우 및 지식재산권을 이용하는 대가로 게이트고메 스위스에게 총 매출의 5%를 지급하기로 하는 내용의 관리 서비스 계약(Management Service Agreement)을 체결하였다.

**라. 기내식 공급 개시**

신청인의 신규 기내식 시설 공사가 지연되어 이 사건 기내식공급계약에서 예정한 것과 달리 신청인이 2018. 7. 1.부터 피신청인에게 기내식을 공급하는 것이 불가능하게 되었고, 이에 피신청인은 신청인의 기내식 공급이 가능해질 때까지 임시로 샤프도앤코코리아 유한회사로부터 기내식을 공급받았다. 신청인의 기내식 제조공장이 2018. 8. 29. 완공되어 신청인은 2018. 9. 12.부터 피신청인에게 기내식 공급을 시작하였다.

**Exhibit 1, Page 22**

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

**마. 이 사건 중재신청 및 반대신청**

1) 그후 신청인과 피신청인 사이에 이 사건 기내식공급계약상 가격 결정 방법 등을 둘러싸고 분쟁이 발생하였고, 신청인은 2019. 6. 17. 국제상업회의소 국제중재재판소(International Chamber of Commerce International Court of Arbitration)에 신청인이 이 사건 기내식공급계약에 따라 피신청인에게 2018. 9. 12.부터 2019. 11. 30.까지 발행한 청구서상의 미지급 대금 지급 및 신청인과 피신청인이 이 사건 기내식공급계약상 가격 결정 방법에 구속된다는 점에 대한 확인 등을 구하는 중재를 신청하였다(ICC 중재 제24544 HTG 사건).

2) 이에 대하여 피신청인은 가격 결정 방법이 30년간 고정된 것이 아니라고 다투면서, 피신청인이 초과 지급하였다고 주장하는 대금의 반환을 구함과 아울러 신청인의 공급지연, 품질미달 등 이 사건 기내식 공급계약상 채무불이행에 따른 손해배상을 구하는 반대신청을 하였다.

**바. 중재판정 및 부속판정**

1) 국제상업회의소 국제중재재판소는 존 비치(John Beechey, CBE), 게리본(Gary Born)과 제이 윌리엄 로울리(J. William Rowley, QC)를 중재인으로 선정하였다.

2) 위 중재인들로 구성된 싱가포르의 중재판정부는 2021. 2. 18. 별지 1 기재와 같은 중재판정을 하였고, 신청인의 경정신청에 따라 2021. 4. 2. 별지 2 기재와 같은 부속판정을 하였다(위 중재판정과 부속판정은 신청인의 신청을 인용하고 피신청인의 반대신청을 기각하는 내용으로 이하 통틀어 '이 사건 중재판정'이라 한다).

**사. 관련 형사사건**

1) 박삼구와 전략경영실 임원 박홍석등은 게이트그룹과의 이 사건 기내식공급계약

- 5 -

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

의 체결 등과 관련하여 특정경제범죄가중처벌등에 관한 법률위반(배임)죄 등으로 기소되었고, 법원은 2022. 8. 17. 박삼구, 박홍석 등의 기내식 사업권 저가 양도의 범죄사실 등을 특정경제범죄가중처벌등에관한법률위반(배임)죄 등으로 인정하여 박상구 등에게 유죄판결을 선고하였다(서울중앙지방법원 2021고합482). 이에 대하여 박삼구 등과 검찰이 모두 항소하여 현재 항소심 계속 중이다(서울고등법원 2022노2261).

　　2) 관련 형사판결 중 이 사건과 관련된 주요 내용은 다음과 같다.

---

**3. 피고인 박삼구, 박홍석, 김호균, 금호건설의 특정경제범죄가중처벌등에관한법률위반(배임) 및 독점규제및공정거래에관한법률위반**

　　피고인 박삼구는 금호그룹의 동일인이자 2013. 11.경부터 2019. 3.경까지 금호산업 대표이사, 2014. 3.경부터 2019. 3.경까지 아시아나항공 대표이사 등으로 재직하였고, 피고인 박홍석은 2014. 1.경부터 2016. 6.경까지 금호타이어 경영관리본부장으로 재직하면서 피고인 박삼구의 지시에 따라 전략경영실 업무 중 국제계약 체결 등 해외 업무를 지원하다가 2016. 7.경부터 2020. 12.경까지 금호그룹 전략경영실장 겸 금호산업 부사장으로 재직하였으며, 피고인 김호균은 2015. 3.경부터 2019. 3.경까지 아시아나항공의 재무담당 임원으로 재직하였다.

　　**가. 기내식 사업권 저가 양도 관련 특정경제범죄가중처벌등에관한법률위반(배임)**

　　피해자 아시아나항공은 제1의 나항 기재와 같이 재무상태가 매우 열악하고 기업 유동성이 낮아 2015. 말 기준으로 약 1조 1,211억 원 상당의 국가 공적 자금이 투입된 상태였으나, 피해자 아시아나항공에 대한 '기내식 독점 공급권' 은 2003.~2018. 피해자 아시아나항공에 대하여 기내식을 독점 공급했던 LSG스카이쉐프코리아(이하 'LSGK' 라 한다)를 기준으로 연 매출액 약 1,200억 원, 매년 순이익 300억 원을 창출하는 우량 사업권이었다. 이에 피고인들은 2015. 5.경부터 피해자 아시아나항공의 핵심 자산인 '기내식 독점 공급권' 을 해외 기내식 관련 업체에 저가로 넘기면서 금호기업에 약 1,600억 원 내지 2,000억 원의 자금을 투자받아 위 '그룹 재건 계획' 에 사용하는 방안을 검토하였다.

　　이에 따라 피고인들은 2015. 5.경부터 2016. 말경까지 투자자문업체인 '스프링파트너스' 를 고용하여 SATS, DNATA, 게이트그룹(기내식 공급업체 Gate Gourmet 운영)을 비롯한 복수의 해외 기내식 업체를 대상으로 '금호기업에 2,000억 원을 투자해주면 30년간 피해자 아시아나항공의

---

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

기내식 독점 공급권을 주겠다' 는 취지의 제안(이하 '패키지딜' 이라 한다)을 하였는데, 위 업체들과의 협상 과정에서 기내식 독점 공급권의 가치는 약 4,060억 원 내지 6,320억 원 상당으로 평가되었고, LSGK, SATS 등은 '아시아나항공이 아닌 금호기업에 투자하는 구조는 배임 등 소지가 있으니 아시아나항공에게 2,000억 원을 투자 하겠다' 는 취지의 역제안을 하기도 하였으나 피고인들이 이를 거절한 바 있다.

이러한 경우 피해자 아시아나항공의 대표이사인 피고인 박삼구와 아시아나항공의 재무담당 임원인 피고인 김호균에게는 피해자 아시아나항공의 주요 자산을 관리함에 있어 법인과 주주 및 채권자의 이익을 고려하여 선량한 관리자의 주의의무를 다하여야 하고, 피해자 아시아나항공이 보유한 기내식 독점 사업권 등 중요 자산을 거래하는 경우 그 자산의 가치를 적정하게 평가하여 실제 가치에 부합하는 적정한 가격으로 거래하여야 하며, 특히 피고인 박삼구가 지배하는 회사에 대한 자금 조달을 조건으로 피해자 아시아나항공의 자산을 양도하는 이해상충 거래를 할 경우 경쟁 입찰을 하거나 다양한 평가 방법을 사용하여 해당 자산의 가치를 객관적으로 평가한 다음 그 결과를 종합하여 피해자 아시아나항공의 주주 및 채권자의 이익이 훼손되지 않도록 거래 가격과 조건을 정해야 하고, 그 거래로 인한 수익과 자금이 피해자 아시아나항공을 위해서 적정하게 사용되도록 관리할 업무상 임무가 있었다.

그럼에도 불구하고 피고인 박삼구는 2016. 1. 초순경부터 피고인 박홍석 등에게 게이트그룹을 상대로 위와 같은 일괄 계약의 협상에 착수할 것을 지시하였고, 피고인 박홍석은 스프링파트너스 담당자 등과 함께 2016. 1. 12.경부터 싱가포르 등에서 게이트그룹 담당자들과 위 '패키지딜' 협상을 진행하고, 피고인 김호균과 함께 2016. 1. 말경 런던, 마드리드 등지에서 게이트그룹 담당자들과 위 '패키지딜' 에 관한 자세한 논의를 진행하는 한편, 2016. 2. 초순경 서울을 방문한 게이트그룹 담당자들과 위 패키지딜에 따라 금호기업에 신주인수권부사채(이하 "BW" 라 한다) 인수 형태로 투자한 자금을 피해자 아시아나항공과의 기내식 공급 사업을 통하여 회수하는 '사업 계획(Business Plan)' 등을 구체화하였다. 이에 위 '사업 계획' 초안에 대한 합의를 위하여 2016. 2. 15. 게이트그룹 사장 Xavier Rossinyol이 서울을 방문하였고, 피고인 박삼구는 2016. 2. 16. 서울 강서구 오쇠동에 있는 '아시아나타운' 건물에서 Xavier Rossinyol을 직접 만나 위 '사업 계획' 을 승인하였다.

이후 피고인 박삼구, 박홍석은 2016. 8. 19. 게이트그룹에 30년간의 기내식 독점 공급권을 부여하는 조건으로 금호기업에 자금을 투자받는 내용의 계약(AGREEMENT REGARDING BOND WITH

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

WARRANT SUBSCRIPTION)을 체결하고, 기내식 독점 공급권의 가치를 게이트그룹이 국내 설비 투자비로 책정한 800억 원에 맞춰 임의로 약 1,333억 원으로 결정하였으며(60:40 합작비율에 맞춰 800억:533억, 합계 1,333억 원), 피고인들은 2016. 12. 30. 위 독점 공급권을 금호기업이 발행하는 BW를 인수하는 형태로 1,600억 원을 금리 0%, 최대 기간 20년으로 지원하기로 한 게이트그룹에게 수의계약을 통하여 실제 가치보다 현저히 낮은 가격에 양도하는 한편, 최소 순이익 보장 약정 등 피해자 아시아나항공에 불리한 계약 조건을 설정하였다.

이로써 피고인들은 순차적으로 공모하여, 위와 같은 업무상 임무에 위배하여 피해자 아시아나항공으로 하여금 30년간의 기내식 독점 공급권을 게이트그룹에 저가 양도하는 한편 위 '최소 순이익 보장 약정'에 따라 피해자 아시아나항공이 30년간 게이트그룹에 추가 수익을 지급하게 하고 그 대가로 피고인 박삼구가 지배하는 금호기업으로 하여금 게이트그룹으로부터 합계 1,600억 원 상당의 자금을 0% 금리로 최대 20년간 지원받게 하는 등 최소 50억 원 이상의 재산상 이익을 취득하게 함으로써, 피해자 아시아나항공에 기내식 독점 사업권의 적정 양도 금액과 실제 양도 금액 사이의 차액 상당 등의 재산상 손해를 가하였다.

## 아. 중재법 및 외국 중재판정의 승인 및 집행에 관한 협약

이 사건과 관련한 중재법 및 외국 중재판정의 승인 및 집행에 관한 협약(Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 이하 '뉴욕협약'이라 한다)의 규정은 다음과 같다.

| 중재법 |
|---|
| 제39조(외국 중재판정) |
| ① 「외국 중재판정의 승인 및 집행에 관한 협약」을 적용받는 외국 중재판정의 승인 또는 집행은 같은 협약에 따라 한다. |
| **뉴욕협약** |
| 제1조 |
| 1. 이 협약은 중재판정의 승인 및 집행의 요구를 받은 국가 이외의 국가의 영토 내에서 내려진 판정으로서, 자연인 또는 법인간의 분쟁으로부터 발생하는 중재판정의 승인 및 집행에 적용 |

**Exhibit 1, Page 26**

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

한다.

**제2조**

1. 각 체약국은 계약적 성질의 것이거나 아니거나를 불문하고, 중재에 의하여 해결이 가능한 사항에 관한 일정한 법률관계에 관련하여 당사자간에 발생하였거나 또는 발생할 수 있는 전부 또는 일부의 분쟁을 중재에 부탁하기로 약정한 당사자간의 서면에 의한 합의를 승인하여야 한다.

2. '서면에 의한 합의'라 함은 계약문 중의 중재조항 또는 당사자간에 서명되었거나, 교환된 서신이나 전보에 포함되어 있는 중재의 합의를 포함한다.

**제3조**

각 체약국은 중재판정을 다음 조항에 규정한 조건하에서 구속력 있는 것으로 승인하고 그 판정이 원용될 영토의 절차 규칙에 따라서 그것을 집행하여야 한다. 이 협약이 적용되는 중재판정의 승인 또는 집행에 있어서는 내국 중재판정의 승인 또는 집행에 있어서 부과하는 것보다 실질적으로 엄중한 조건이나 고액의 수수료 또는 과징금을 부과하여서는 아니된다.

**제5조**

2. 중재판정의 승인 및 집행이 요구된 국가의 권한 있는 기관이 다음의 사항을 인정하는 경우에도, 중재판정의 승인과 집행을 거부할 수 있다.

　　나. 판정의 승인이나 집행이 그 국가의 공공의 질서에 반하는 경우

## 2. 판단

### 가. 뉴욕협약의 적용

1) 대한민국은 1973. 2. 8. ① 다른 가입국의 영토 내에서 내려진 중재판정에 한하여, 또한 ② 대한민국 법상 상사관계에 관한 분쟁에 한하여 이를 적용한다는 유보선언 하에 뉴욕협약에 가입하였고, 위 협약은 1973. 5. 9. 대한민국에서 발효되었다.

2) 중재법 제39조 제1항은 '뉴욕협약을 적용받는 외국 중재판정의 승인 또는 집행은 같은 협약에 따라 한다.'고 규정하고, 뉴욕협약 제1조는 '이 협약은 중재판정의 승인 및 집행의 요구를 받은 국가 이외의 국가의 영토 내에서 내려진 판정으로서, 자연인

**Exhibit 1, Page 27**

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

또는 법인간의 분쟁으로부터 발생하는 중재판정의 승인 및 집행에 적용한다.'고 규정하고 있는바, 앞서 본 소명사실에 의하면 이 사건 중재판정의 중재대상은 신청인과 피신청인 사이에 체결된 이 사건 기내식공급계약에 기초하여 발생한 법률관계로서 대한민국 법상 상사관계에 관한 분쟁에 해당하며, 이 사건 중재판정은 당사자가 지정한 중재지인 싱가포르에서 내려졌으므로, 이 사건 중재판정의 승인 및 집행에 관하여는 뉴욕협약이 적용된다.

**나. 신청원인에 관한 판단**

뉴욕협약 제2, 3조에 의하면, 이 사건 중재판정은 피신청인이 그 판정에 뉴욕협약 제5조 제1항 각 호의 사유가 있음을 주장·증명하거나 이 법원이 뉴욕협약 제5조 제2항 각 호의 사유가 있음을 인정하는 경우 외에는 대한민국에서 승인·집행되어야 한다.

**다. 피신청인의 주장에 관한 판단**

1) 피신청인의 주장

가) 이 사건 기내식공급계약은 게이트그룹이 박삼구 등의 배임행위에 적극 가담한 결과로 체결된 것으로 이 사건 중재판정을 승인·집행하는 것은 대한민국 형법상 범죄행위에 가담함으로써 얻은 이익을 실현해주는 것이어서 중재법 제39조 제1항, 뉴욕협약 제5조 제2항 나호의 '중재판정의 승인이나 집행이 그 국가의 공공의 질서에 반하는 경우'에 해당하므로, 그 승인 및 집행이 허용되어서는 안된다.

나) 피신청인은 중재절차에서 이 사건 기내식공급계약을 게이트그룹이 박삼구 측으로부터 1,600억 원 상당의 BW를 인수하는 대가로 체결된 것으로 해석하는 경우 기내식 공급계약이 무효라고 주장하였으나, 중재판정부가 이러한 피신청인의 주장을 판

**Exhibit 1, Page 28**

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

단하지 아니하였는바, 이는 민사소송법 제451조 제1항 제9호의 판결에 영향을 미칠 중요한 사항에 관하여 판단을 누락한 때에 해당하는 것으로 중재판정의 승인 및 집행을 거부할 수 있는 사유에 해당한다.

   2) 선량한 풍속 기타 사회질서 위반 주장에 대한 판단

   가) 관련 법리

   뉴욕협약 제5조 제2항 나호에 의하면 중재판정의 승인이나 집행이 그 국가의 공공의 질서에 반하는 경우에는 집행국 법원은 중재판정의 승인이나 집행을 거부할 수 있는바, 이는 중재판정의 승인이나 집행이 집행국의 기본적인 도덕적 신념과 사회질서를 해하는 것을 방지하여 이를 보호하려는 데 그 취지가 있다 할 것이므로, 그 판단에 있어서는 국내적인 사정뿐만 아니라 국제적 거래질서의 안정이라는 측면도 함께 고려하여 제한적으로 해석하여야 할 것이고, 해당 중재판정을 인정할 경우 그 구체적 결과가 집행국의 선량한 풍속 기타 사회질서에 반할 때에 승인이나 집행을 거부할 수 있다고 할 것이다(대법원 2003. 4. 11. 선고 2001다20134 판결 참조).

   배임행위의 실행행위자와 거래하는 상대방으로서는 기본적으로 그 실행행위자와는 별개의 이해관계를 가지고 반대편에서 독자적으로 거래에 임하는 것이므로, 거래상대방이 배임행위를 유인·교사하거나 배임행위의 전 과정에 관여하는 등 배임행위에 적극 가담하는 경우에는 그 실행행위자와 체결한 계약이 반사회적 법률행위에 해당하여 무효로 될 수 있다. 그렇지만 관여의 정도가 거기에까지 이르지 아니하고 법질서 전체적인 관점에서 볼 때 거래 상대방이 반대편에서 독자적으로 거래에 따르는 위험을 피하고 합리적인 이익을 보호하기 위하여 필요한 조치를 요구하는 등 그 계약의 동기, 목적 및 의도, 그 계약의 내용 및 요구된 조치의 필요성 내지 관련성, 거래 상대방과

- 11 -

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

배임행위의 실행행위자와 관계 등을 종합할 때 사회적 상당성을 갖추고 있다고 평가할 수 있는 경우에는, 비록 거래상대방이 그 계약의 체결에 임하는 실행행위자의 행위가 배임행위에 해당할 수 있음을 알거나 알 수 있었다 하더라도 그러한 사정만으로 그 계약을 반사회적 법률행위에 해당한다고 보아 무효라고 할 수는 없다(대법원 2009. 3. 26. 선고 2006다47677 판결 참조).

　　나) 구체적 판단

　　　　① 외국 중재판정은 확정판결과 동일한 효력이 있어 기판력이 있으므로 집행승인 결정을 통하여 집행력을 부여받으면 강제집행절차로 나아갈 수 있게 되고, 뉴욕협약의 취지 및 위 관련 법리에 비추어 볼 때 강제집행이 국제적 관점에서 집행국의 공공질서에 반하는 경우나 재심사유에 해당하는 사유가 있어 집행이 현저히 부당한 경우 등 예외적인 경우가 아닌 한 중재판정이 단순히 실체적 권리관계에 배치되어 부당하다는 사유만으로는 중재판정에 따른 집행을 거부할 수 없다. 그런데 피신청인 주장의 집행 거부 사유는 이 사건 기내식공급계약이 배임행위에 적극적으로 가담한 결과로 체결된 반사회질서 법률행위에 해당하여 실체적으로 효력이 없다는 것으로서, 이는 중재사건의 본안에서 청구권의 유무와 관련하여 다투어질 항변 사유일 뿐 집행 단계에서 이를 거부할 수 있는 사유라고 보기 어렵다.

　　　　② 설령 위와 같은 사유를 중재판정의 집행이 공공질서에 반하여 허용될 수 없는 경우에 해당된다고 보더라도, 기록 및 심문 전체의 취지를 더하여 알 수 있는 다음과 같은 사정을 종합하면 신청인이 박삼구 등의 배임행위에 적극 가담하여 이 사건 기내식공급계약을 체결한 것으로 인정되지 않는다.

　　　　○ 금호그룹은 피신청인의 기내식 사업권을 매개로 박삼구가 금호산업을 인수

- 12 -

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

하는 데 필요한 자금을 조달하기 위해 합작투자법인 설립, 기내식 독점공급계약, 신주인수권부사채 인수를 일괄적으로 추진하는 일괄거래(Package deal)를 마련한 뒤, 투자자문회사인 싱가포르 홍릉그룹 소속 국내 법인인 스프링파트너스를 통해 LSGK, SATS, DNATA 등 기내식 공급회사들에 일괄거래 제안을 하였으나 협상이 결렬되었다. 금호그룹은 위 회사들과의 협상 결렬 후인 2016. 1.경 게이트그룹에 같은 내용의 제안을 하였고, 게이트그룹은 기내식 독점공급계약의 기간과 공급가격, 인수할 사채의 금액과 사채의 상환기한, 합작법인의 지분비율 등 여러 가지 거래조건을 두고 1년 남짓 피신청인, 금호홀딩스와 협상하면서 몇 차례 양해각서를 체결하는 등의 과정을 거친 끝에 합작투자계약, 기내식 공급계약, 신주인수권부사채 인수계약을 순차로 체결하였다. 이와 같은 일괄거래의 타결 과정에서 알 수 있듯이 게이트그룹은 금호그룹의 일괄거래 구상·계획 단계에서는 관여한 바가 없고, 금호그룹이 기본적인 구조를 미리 완성하여 놓은 일괄거래를 사후에 제안받고 사업전망과 경제적인 득실을 고려하여 세부적인 사항을 협의·조율한 뒤 이를 수용한 것에 불과하다.

○ 위와 같은 일괄거래의 구조에 비추어 피신청인과의 기내식 공급계약과 금호홀딩스의 신주인수권부사채 인수계약이 서로 연계되어 있어 피신청인에게는 불리하고 금호홀딩스에게는 유리한 결과가 초래된다는 점을 신청인이 인식하였거나 인식할 수 있었던 것으로 보이기는 하나, 이러한 점만으로 금호그룹의 내부 사정과 아무런 관련성이 없는 신청인이 금호그룹의 제안에 응하여 경제적 동기에서 한 사법상의 거래를 금호그룹 계열사 사이의 배임 범죄에 적극 가담한 것으로서 무효라고 평가하기는 어렵다.

○ 신청인이 이 사건 기내식공급계약에 따라 30년간 독점적 공급권을 보장받

- 13 -

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

고 유리한 공급가격 기준을 적용받음으로써 장기적으로 안정적인 매출수익을 얻을 수 있는 지위를 취득하게 된 것으로 보이나, 그 대가로 신청인의 계열사인 게이트그룹 파이낸셜서비스가 피신청인의 계열사인 금호홀딩스에 신주인수권부사채 인수의 형식으로 1,600억 원에 이르는 자금을 최장 20년 동안 무이자로 지원하기로 함으로써 그 이자 또는 금융비용 상당액의 손실을 감수하게 되었다. 이처럼 일괄거래를 이루는 각 계약의 연계 구조와 각 당사자의 그룹 내 상호관계를 전체적으로 살펴보았을 때, 신청인이 박삼구 등의 배임행위에 편승하여 피신청인의 손실 하에 일방적으로 과다한 경제적 이익을 얻은 것으로 보기도 어렵다.

③ 이와 달리 피신청인은 게이트그룹이 협상 초기 단계부터 이 사건 일괄거래가 '그룹 재건 계획'을 위한 것임을 잘 알고 있었고 박삼구 측과 공모하여 일괄거래가 배임이나 공정거래법위반행위임이 밝혀지지 않도록 은닉하는 등 박삼구 등의 배임행위에 적극 가담하였다고 주장한다. 그러나 위와 같이 이 사건 기내식공급계약이 무효라고 보기 위해서는 게이트 그룹이 박삼구 등의 행위가 배임행위에 해당할 수 있음을 알거나 알 수 있었음을 넘어 배임행위를 유인·교사하거나 배임행위의 전 과정에 관여하는 등으로 배임행위에 적극 가담하였음이 인정되어야 하는바, 기록상 게이트그룹이 협상 중단 후 먼저 재개를 제안하거나 자신에게 유리한 조건을 제시하여 반영되도록 하는 등 협상 과정에서 일부 주도적인 역할을 한 사정이 인정된다 하더라도, 그 협상이 전체적으로는 금호그룹이 미리 마련해 둔 일괄거래의 틀 안에서 진행된 이상, 위와 같은 사정만으로 게이트그룹이 박삼구 등의 배임행위를 유인·교사하거나 일괄거래의 전 과정을 주도적으로 관여하여 박삼구 등의 배임행위에 적극 가담하였다고 인정하기에 부족하고 달리 이를 인정할 증거가 없다.

- 14 -

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

3) 판단누락 주장에 대한 판단

가) 외국 중재판정에 민사소송법 제451조 제1항의 재심사유(제9호 판결에 영향을 미칠 중요한 사항에 관하여 판단을 누락한 때 등)에 해당하는 사유가 있어 그 집행이 현저히 부당하고 상대방으로 하여금 그 집행을 수인하도록 하는 것이 정의에 반함이 명백하여 사회생활상 용인할 수 없을 정도에 이르렀다고 인정되는 경우에 그 중재판정의 집행을 구하는 것은 권리남용에 해당하거나 공서양속에 반하여 허용될 수 없다(대법원 2018. 12. 13. 선고 2016다29931 판결 등 참조).

나) 그러나 소갑 제3, 18, 19호증의 각 기재에 의하면, 피신청인은 중재절차에서 이 사건 기내식 공급계약이 유효함을 전제로 '이 사건 기내식공급계약의 가격결정 체계를 해석함에 있어 신주인수권부사채 인수계약을 관련 배경 사실의 일부로 고려하는 것은 대한민국 법에 따라 기내식 공급계약을 무효의 계약으로 만드는 해석 결과를 낳으므로 부당하다'는 취지의 계약조항의 해석과 관련한 주장을 하였을 뿐 이 사건 기내식공급계약이 무효라고 주장하지는 않았던 것으로 보이는 점, 피신청인이 판단누락 등을 이유로 싱가포르 국제상사법원(Singapore International Commercial Court)에 이 사건 중재판정에 대한 취소의 소를 제기하였으나, 피신청인의 청구가 기각되었고 이에 대한 항소도 기각된 점 등을 고려하면, 이 사건 중재판정에 판단누락의 사유가 있어 그 집행이 거부되어야 한다는 피신청인의 이 부분 주장도 이유 없다.

## 3. 결론

그렇다면 이 사건 신청은 이유 있으므로 이를 인용하기로 하여 주문과 같이 결정한다.

- 15 -

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

2024. 2. 16.

재판장     판사     **최정인**

판사     **임효빈**

판사     **방민우**

열 람 용

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

별지 1

## 중재판정 주문[1]

### 9.3 판정부의 최종 판정

9.3.1. 전술한 내용에 근거하여, 판정부는 이에 따라 다음과 같이 결론, 선언, 명령 및 판정한다.

(a) 피신청인은 2018. 9. 12.부터 2019. 11. 30.까지의 기간에 대한 미결제 청구서에 따른 원금으로 28,335,526,067.00원을 신청인에게 지급하여야 한다.

(b) 피신청인은 2020. 1. 10. 기준 신청인의 청구서에 대해 미결제된 원금에 대하여 2020. 1. 10. 기준 지급하여야 하는 이자로 562,901,664.00원을 신청인에게 지급하여야 한다.

(c) 피신청인은 신청인에게 2020. 1. 10. 기준 미결제된 원금 및 이자 금액의 합계인 28,898,427,731.00원에 대하여 2020. 1. 10.부터 최종 완납시까지 코리보(KORIBOR) 3개월물 금리에 연 8%를 더한 이율을 적용한 단리 이자를 추가로 지급하여야 한다.

(d) 2020년 사업계획서를 포함하여, 초기 사업계획서 및 기내식 공급계약의 부속서 1.4에 따라 신청인이 조정한 여하한 후속 사업계획서에 의거하여 계산된 승객당 기여 수수료를 포함하여 기내식 공급계약에 명시된 가격결정 체계는 양당사자에게 구속력을 가지며 이들 간의 추가합의는 요하지 않는다.

(e) 피신청인의 반대신청을 전부 기각한다.

(f) 피신청인은 이 사건 중재절차의 합리적인 비용(ICC 관리요금과 중재 판정부의 수당

---

[1] 신청인이 소갑 제3호증으로 제출한 번역문에 따른다.

- 17 -

개인정보유출피해자 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

및 경비에 대한 분담금 포함)에 대하여 신청인에게 영국 1,474,523.26파운드화 (GBP), 미국 1,087,340.87 달러화(USD) 및 6,948.05 싱가포르 달러화(SGD)의 총액 을 지급하여야 한다. 이 금액에는 이 사건 판정일로부터 2주 후부터 완납일까지 싱가포르 국제중재법 제20조 (3)에 따라 규정되고, 청구되는 연 5.33%의 법정이율 에 의한 단리 이자가 발생한다.



**Exhibit 1, Page 36**

개인정보유출주의 등록자:임효빈, 등록일시:2024.02.16 23:59, 출력자:손우정, 다운로드일시:2024.02.16 15:12

별지 2

## 부속판정[2]

**4. 결정**

4..1.1. 중재판정부는 ICC 규칙 제36조 2항에 따라 신청인이 요청한 정정을 허가하고, 최종판정의 단락 9.3.1 (a) - (c)를 다음 문구로 대체한다.

(a) 피신청인은 2018. 9. 12.부터 2020. 10. 15.까지의 기간에 대한 미결제 청구서에 따른 원금으로 35,799,240,103원을 신청인에게 지급하여야 한다.

(b) 피신청인은 2020. 10. 30. 기준 신청인의 청구서에 대해 미결제된 원금에 대하여 2020. 10. 30. 기준 지급하여야 하는 이자로 3,105,902,561원을 신청인에게 지급하여야 한다.

(c) 피신청인은 신청인에게 2020. 10. 30. 기준 미결제된 원금 및 이자 금액의 합계인 38,905,142,664원에 대하여 2020. 10. 30.부터 최종 완납시까지 코리보(KORIBOR) 3개월물 금리에 연 8%를 더한 이율을 적용한 단리 이자를 추가로 지급하여야 한다.

4.1.2. 최종 판정의 나머지는 그대로 유지된다.

---

[2] 신청인이 소갑 제4호증으로 제출한 번역문에 따른다.

**Exhibit 1, Page 37**