Thomas Rubinsky (SBN 302002)
Thomas.rubinsky@halpernmay.com
HALPERN MAY YBARRA GELBERG LLP
550 South Hope Street, Suite 2330
Los Angeles, California 90071
Telephone:   (213) 402-1900
Facsimile:    (213) 402-1901

Robert K. Kry (pro hac vice)
rkry@mololamken.com
Jackson A. Myers (pro hac vice)
jmyers@mololamken.com
MOLO LAMKEN LLP
600 New Hampshire Ave., N.W., Suite 500
Washington, D.C. 20037
Telephone:   (202) 556-2011
Facsimile:    (202) 556-2001

Attorneys for Petitioner
GATE GOURMET KOREA CO., LTD.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GATE GOURMET KOREA CO., LTD., a Korean company,<br><br>Petitioner,<br><br>v.<br><br>ASIANA AIRLINES, INC., a Korean company,<br><br>Respondent. | CASE NO. 2:24-cv-01265-RGK-PD<br><br>**PETITIONER GATE GOURMET'S OBJECTIONS TO THE DECLARATION OF HONGKI KIM**<br><br>Before:  Hon. R. Gary Klausner<br>Date:     June 3, 2024<br>Time:     9:00 a.m.<br>Place:    Courtroom 850, 8th Floor<br>              Roybal Federal Building<br>              and U.S. Courthouse |

## PETITIONER GATE GOURMET'S OBJECTIONS
## TO THE DECLARATION OF HONGKI KIM

| OBJECTED-TO MATERIAL | GROUNDS FOR OBJECTION |
|---|---|
| Objection 1<br><br>Declaration in its entirety | **Inadmissible expert testimony; unreliable methods.** Fed. R. Evid. 702. Professor Kim's testimony does not meet the requirements for expert testimony. In particular, his opinions are not the product of a reliable application of reliable principles and methods under Rule 702(c) and (d) because he fails to analyze or even mention the decision of the Seoul Southern District Court in this case that reached conclusions inconsistent with the ones that he reaches. |
| Objection 2<br><br>"[T]he matters set forth herein are based on my personal knowledge and, if called as a witness, I could and would testify competently thereto."<br><br>¶2, lns. 2:7-9 | **Lack of personal knowledge; lack of foundation; failure to disclose basis for opinion.** Fed. R. Evid. 602, 702, 703. Professor Kim's expert declaration contains numerous factual allegations about the facts of the case for which no foundation or basis for personal knowledge is identified. |
| Objection 3<br><br>"In the instant case, Asiana (i) established a joint venture company with GGS and (ii) transferred the exclusive license to provide inflight catering to GGK, but the actual proceeds from this transaction reverted to Chairman Sam-Koo Park ("Chairman Park"), the representative director and the major shareholder of Asiana."<br><br>¶11, lns. 5:19-23 | **Lack of personal knowledge; lack of foundation; failure to disclose basis for opinion; improper expert opinion.** Fed. R. Evid. 602, 702, 703. The declaration fails to disclose any foundation for these factual assertions. The statements are not the product of any expert analysis. |

| | |
|---|---|
| <u>Objection 4</u><br><br>"In the instant case, Chairman Park was a cash-strapped (independent) representative director and major shareholder of Asiana. He caused Kumho Corporation, a company he founded, to issue a bond with warrant ("BW"), to which the Gategroup . . . subscribed. As part of that transaction, the Gategroup paid Chairman Park KRW 160 billion, and Chairman Park caused Asiana, which was under his control, to set up a joint venture company (GGS) with GGK and agreed to sell to GGK the lucrative, exclusive license to provide inflight catering service to Asiana in return."<br><br>¶25, lns. 11:11-19 | **Lack of personal knowledge; lack of foundation; failure to disclose basis for opinion; improper expert opinion.** Fed. R. Evid. 602, 702, 703. The declaration fails to disclose any foundation for these factual assertions. The statements are not the product of any expert analysis. |
| <u>Objection 5</u><br><br>"GGS, a global player in the inflight catering business, must have clearly known that it was not a common business practice to purchase Asiana's catering business in exchange for subscribing to Kumho Corporation's BW. If not, at a minimum, GGS should have easily known that Chairman Park executed a transaction in violation of the restrictions on his representative authority had it paid a little attention. GGS appears to have executed the transaction carelessly, ignoring such red flags."<br><br>¶26, lns. 11:22-12:2 | **Lack of personal knowledge; lack of foundation; speculation; failure to disclose basis for opinion; outside field of expertise.** Fed. R. Evid. 602, 702, 703. The declaration fails to disclose any foundation for the factual assertions. The factual assertions are not the product of any expert analysis. To the extent the statement includes expert opinions, the declaration fails to establish Professor Kim's expertise to offer those opinions. |
| <u>Objection 6</u><br><br>"In the instant case, Chairman Park was a cash-strapped (independent) representative director and major shareholder of Asiana. He caused Kumho Corporation, a company he founded, to | **Lack of personal knowledge; lack of foundation; speculation; failure to disclose basis for opinion; outside field of expertise.** Fed. R. Evid. 602, 702, 703. The declaration fails to disclose any foundation for the factual assertions. The |

| | |
|---|---|
| issue the BW, to which GGFS subscribed. As part of that transaction, the Gategroup paid Chairman Park KRW 160 billion, and Chairman Park caused Asiana to set up a joint venture company (GGK) with GGS and agreed to sell to GGK the lucrative, exclusive license to provide inflight catering service to Asiana in return. From Asiana's perspective, given these facts, Chairman Park can be deemed to have abused his representative authority for his personal interests."<br><br>¶32, lns. 13:20-27 | factual assertions are not the product of any expert analysis.  To the extent the statement includes expert opinions, the declaration fails to establish Professor Kim's expertise to offer those opinions. |
| <u>Objection 7</u><br><br>"In the instant case, Chairman Park was both one of the two 'independent' . . . representative directors of Asiana, and was a major shareholder who wielded 'de facto influence' over the Kumho Group, of which Asiana was a part."<br><br>¶44, lns. 18:9-12 | **Lack of personal knowledge; lack of foundation; failure to disclose basis for opinion; improper expert opinion.**  Fed. R. Evid. 602, 702, 703.  The declaration fails to disclose any foundation for these factual assertions.  The statements are not the product of any expert analysis. |
| <u>Objection 8</u><br><br>"In the instant case, Asiana first established a joint venture (GGK) with GGS, which was an affiliate of the Gategroup. Then, Asiana sold an exclusive license to provide inflight catering service to GGK. But the actual benefit of the sale of the exclusive license fell solely on Chairman Park, who was both a representative director and a major shareholder of Asiana. Therefore, this transaction between Asiana and GGK is highly likely to constitute a self-dealing transaction . . . ."<br><br>¶50, lns. 19:17-22 | **Lack of personal knowledge; lack of foundation; speculation; failure to disclose basis for opinion; outside field of expertise.**  Fed. R. Evid. 602, 702, 703.  The declaration fails to disclose any foundation for the factual assertions.  The factual assertions are not the product of any expert analysis.  To the extent the statement includes expert opinions, the declaration fails to establish Professor Kim's expertise to offer those opinions. |

| Objection 9 | Lack of personal knowledge; lack of foundation; speculation; failure to disclose basis for opinion; outside field of expertise. Fed. R. Evid. 602, 702, 703. The declaration fails to disclose any foundation for the factual assertions. The factual assertions are not the product of any expert analysis. To the extent the statement includes expert opinions, the declaration fails to establish Professor Kim's expertise to offer those opinions. |
|---|---|
| "In the instant case, even if Asiana's board approved the sale of the exclusive license to provide inflight catering to GGK, that was not a prior board approval nor were material, sensitive facts, including the Gategroup's acquisition of the exclusive license in exchange for the Gategroup's bankrolling of Chairman Park or Chairman Park's interests in the sale as a representative director and a major shareholder of Asiana, disclosed to the board prior to the board approval. To sum up, if Asiana's board approved the sale of the exclusive license to provide inflight catering to GGK as an ordinary transaction, a requisite board approval of the sale under Article 398 of the Korean Commercial Act cannot be found."<br><br>¶56, lns. 22:10-18 | |

DATED:  May 20, 2024

HALPERN MAY YBARRA GELBERG LLP


By:      */s/ Thomas Rubinsky*
              THOMAS RUBINSKY

*Attorneys for Petitioner*
*GATE GOURMET KOREA CO., LTD.*